

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00066-CV

CARL STORCK AND VICKI STORCK, Appellants

V.

TRES LAGOS PROPERTY OWNERS ASSOCIATION, INC., Appellee

On Appeal from the 62nd District Court
Franklin County, Texas
Trial Court No. 10964

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

# O P I N I O N

## I.    Background

Carl Storck and Vicki Storck[1] purchased five lots[2] in the Tres Lagos subdivision in Franklin County in 2008 and moved into a home located on the property. Subdivision property ownership and membership in the Tres Lagos Property Owners' Association, Inc. (Association) requires compliance with certain covenants and restrictions.[3] Based on certain actions taken by the Franklin County Commissioners' Court in 2002 to "deplat" the five lots Storck purchased in 2008, Storck did not believe those lots were subject to subdivision restrictions, covenants, dues or fees. Accordingly, Storck operated a commercial business[4] on the five lots at issue and never paid dues for those lots.[5]

After Storck had been living in the subdivision for approximately one year, Storck sued the Association, complaining that it violated its bylaws and articles of incorporation by (1) failing to maintain roadways, fencing, and the Association's swimming pool, (2) soliciting proxy votes, (3) holding Association meetings in which matters were decided in the absence of a

[1]Because their interests are identical, Carl Storck and Vicki Storck will be referred to as "Storck."

[2]The lots, numbered 93–97, were purchased from Greg and Dana Divin in October 2008. In 1984, Storck purchased lots numbered 98–105 in the same subdivision, but did not live on any of those lots.

[3]The covenants and restrictions on and for the Tres Lagos subdivision require, among other things, that "[e]ach and every owner of any and all lots within the subdivision unit shall become a member of the subdivision property owners association at the time such subdivision property owners association is formed." Further, "[a]ll lots . . . shall be used, known and described as single-family residential lots," and "[e]ach and every owner covenants and promises to pay, to the property owners association, when due, any and all dues and maintenance fees."

[4]Storck acknowledges that the original and all amended covenants prohibit the operation of a commercial business on property in Tres Lagos. Storck operates a business known as The Equipment Doctor on the disputed or deplatted property.

[5]Storck, recognizing the lots purchased in 1984 were included in the subdivision, paid dues owed on those lots.

quorum, (4) failing to name a registered agent for service of process, (5) failing to provide proper notice of meetings in violation of the Texas Open Meetings Act, (6) failing to obtain and/or maintain liability insurance for the Association's swimming pool, (7) failing to file not-for-profit organization filings required by the Internal Revenue Service, and (8) amending the covenants and restrictions of the Association without a vote by members. Storck sought injunctive relief that would require the Association to rectify all activities and/or to be replaced or monitored by the trial court.

The Association filed a counterclaim for declaratory judgment, seeking a declaration that (1) the five lots Storck purchased in 2008 are subject to all easements, rights-of-way, covenants, and restrictions applicable to the subdivision, including all assessments, dues, and late fees owed by virtue of Association membership and (2) the deplat order of the Commissioners' Court is void to the extent it may be interpreted to cancel the covenants and restrictions as they applied to the five lots in question. The counterclaim also alleged that Storck removed and/or destroyed the perimeter fence on the five lots in question and sought a money judgment for the repair or replacement of the fence. The Association further sought to enjoin Storck from denying the Association access across the designated easement areas for the purposes of replacing and maintaining the perimeter fence in order to secure the subdivision.

Storck filed a general denial answer in response to the Association's counterclaim. In May 2011, the trial court entered an order on the Association's counterclaim declaring that the Commissioners' Court did not have jurisdiction or authority to cancel, modify, or otherwise change or limit the subdivision restrictions, covenants, or conditions with respect to lots 93

3

through 97 of the Tres Lagos Subdivision. Accordingly, the trial court found that the subject lots continuously have been subject to the obligations imposed under the covenants and restrictions applicable to the subdivision.

In May 2013, after a bench trial, the trial court entered its judgment (1) finding that all lots owned by Storck that are within the subdivision are subject to the covenants, restrictions, and easements of the subdivision; (2) permanently enjoining Storck from operating a commercial business "on lots in the Subdivision," because the operation of such business violates the subdivision covenants and restrictions; (3) finding that Storck owes unpaid dues and assessments in the sum of $4,000.00; (4) finding that the Association's board of directors is composed of James Rose, Barbara Lester, Jeff Lester, and Gail Cerveny; (5) finding that the Association is not subject to the Texas Open Meetings Act; and (6) finding that the Association's bylaws are not a dedicatory instrument required to be filed in the Office of the County Clerk of Franklin County. The trial court further determined that the Association owns the perimeter fence and, thus, has the right to replace and reinstall the fence along the northern boundary of lots 93 through 97. However, the trial court did find that Storck may, at his own expense, place a gate at the intersection of the existing gravel drive and FM 2723 for ingress and egress. Finally, the judgment awarded attorney fees to the Association.

At Storck's request, the trial court entered findings of fact and conclusions of law. Thereafter, Storck filed a motion for new trial challenging the trial court's findings and conclusions, alleging the affirmative defense of the statute of limitations, and otherwise alleging the existence of new evidence, i.e., that the Association's members formed an election

4

committee and elected a new board of directors. Thereafter, Storck filed his first amended motion for new trial raising an additional allegation of new evidence, i.e., that a member of the Association's board operates a commercial business within the subdivision. In addition, Storck filed a motion for judgment notwithstanding the verdict. After a hearing, the trial court denied Storck's post-trial motions.

On appeal, Storck seeks reversal because (1)(a) the Association's board of directors was not validly elected and (b) because a summary judgment order in a different lawsuit found that the Association's board is not valid, (2) there is new evidence that an Association member operates a commercial business in the subdivision, (3)(a) Storck is a bona fide innocent purchaser and (b) all claims alleged in the counterclaim are barred by limitations, and (4) the trial court abused its discretion in failing to address the inaction of the Association's board of directors.

## II.     The Election of the Association's Board of Directors in July 2012 Was Invalid

### A.     Standard of Review

Findings of fact entered in a case tried to the court, as here, "'are of the same force and dignity as a jury's answers to jury questions.'" *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (quoting *.39 Acres v. State*, 247 S.W.3d 384, 387 (Tex. App.—Texarkana 2008, pet. denied)). "The trial court's findings of fact are reviewable for legal and factual sufficiency . . . by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question." *.39 Acres v. State*, 247 S.W.3d 384, 387 (Tex. App.—Texarkana 2008, pet. denied) (citing *Ortiz v. Jones*, 917

5

S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)); *see Trahan*, 322 S.W.3d at 430.

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In our review, we must credit evidence favorable to the judgment if a reasonable fact-finder could, disregard contrary evidence unless a reasonable fact-finder could not, and reverse the fact-finder's determination only if the evidence presented in the trial court would not enable a reasonable and fair-minded fact-finder to reach the judgment under review. *Id.*; *Trahan*, 322 S.W.3d at 430. We will sustain the appellants' legal-sufficiency challenges if the record reveals (1) the complete absence of evidence of a vital fact, (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) that the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) that the evidence conclusively establishes the opposite of a vital fact. *See Wilson*, 168 S.W.3d at 810. "[M]ore than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex. 1995) (quoting *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994)))).

When considering a factual sufficiency challenge, we must consider and weigh all the evidence, not just the evidence that supports the trial court's judgment. *Trahan*, 322 S.W.3d at 430. We will set aside the judgment only if it is so contrary to the overwhelming weight of the

6

evidence that it is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). Under either standard of review, we must be mindful that the trial court, as finder of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

We review de novo the trial court's conclusions of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although appellants may not challenge a trial court's conclusions of law for factual sufficiency, an appellate court may review the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.*

The Association contends that, because Storck failed to make a specific complaint or objection to any findings of fact regarding its first appellate point, such findings are conclusively established. *See Looney v. Gibraltar Sav. Ass'n.*, 695 S.W.2d 336, 340 (Tex. App.—Amarillo 1985, no writ) (factual findings not attacked on appeal accepted as conclusive). Although Storck does not explain which fact-findings or legal conclusions he is challenging, we have reviewed the substance of his first appellate argument to determine, as best we can, which fact-findings and legal conclusions Storck implicitly challenges. *See Howeth Invs., Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 888 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (construing appellant's challenges, which failed to link to specific findings and conclusions, as challenging pertinent findings and conclusions that supported complained-of aspects of judgment); *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 981 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (same); *see also* TEX. R. APP. P. 38.9; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.

7

1989) (points of error construed liberally "in order to obtain a just, fair[,] and equitable adjudication of the rights of the litigants").

## B.    Analysis

Storck initially complains that the Association's board of directors is invalid due to an invalid election. Storck bases this argument on the Association's alleged violation of Section 209.014 of the Texas Property Code, which requires the board of a property owners' association to call an annual meeting of the association's members.[6] Although a membership meeting was called in September 2011,[7] the notice of this meeting indicated that only members in good standing, i.e., those members who were current on Association dues, would be permitted to vote. The September meeting came to a halt when the directors were advised by one of the Association's members that the voting requirements had changed and that, in fact, even members not current on their dues were entitled to vote. In light of this development, no business was conducted at the September 2011 meeting, which was reconvened in July 2012. Barbara Lester, then treasurer of the Association, testified that a quorum of members was present at the July 2012 meeting. In making this determination, the proxies from the September 2011 meeting were counted since the July 2012 meeting was reconvened from the September 2011 meeting. In effect, a quorum was established by counting members in good standing (i.e., those current on

---

[6]Section 209.014(a) of the Property Code states, "Notwithstanding any provision in a dedicatory instrument, a board of a property owners' association shall call an annual meeting of the members of the association." TEX. PROP. CODE ANN. § 209.014(a) (West Supp. 2013).

[7]Storck testified that the last meeting for which he had received notice was in 2009.

8

their dues) as of the September 2011 meeting. The July 2012 meeting resulted in an election of the Association's board members. The then-current board members were re-elected.[8]

Storck disputes the validity of this election and takes the position that, at least as of July 2012, the Association did not have a valid board of directors because (1) Association members who were not current on their dues were excluded from voting in violation of Section 209.0059(a) of the Texas Property Code, (2) Association members who were not current on their dues were not counted for purposes of establishing a quorum, and (3) the Association's board of directors improperly amended the Association's covenants and restrictions, giving each member one vote rather than allocating one vote per lot owned. This course of events, claims Storck, means that the Association failed to conduct a valid election in either 2011 or 2012. Consequently, Storck's argument continues, the two appointed board members whose terms expired in 2011—Gayle Cerveny and Barbara Lester—were, according to Storck, no longer board members as of January 1, 2012. *See* TEX. PROP. CODE ANN. § 209.00593(a) (West Supp. 2013) (board member appointed to fill vacant position on board shall serve remainder of position's unexpired term).[9]

---

[8]Those re-elected to the board at the July 2012 meeting were: James Rose, president; Jeff Lester, vice-president; Gayle Cerveny, secretary; and Barbara Lester, treasurer.

[9]Section 209.00593 provides,

> (a) Notwithstanding any provision in a dedicatory instrument, any board member whose term has expired must be elected by owners who are members of the property owners' association. A board member may be appointed by the board to fill a vacancy on the board. A board member appointed to fill a vacant position shall serve for the remainder of the unexpired term of the position.

> (b) The board of a property owners' association may amend the bylaws of the property owners' association to provide for elections to be held as required by Subsection (a).

9

The trial court entered the following findings of fact and conclusions of law relative to the above-referenced complaints:

**FINDINGS OF FACT**

. . . .

8. The Board of Directors for Tres Lagos Property Owners Association, Inc. held an annual meeting of members on September 1, 2011, that was adjourned and reconvened with a quorum present on July 21, 2012. A Board of Directors for Tres Lagos Property Owners Association, Inc., was elected at the July 21, 2012, meeting to serve two-year terms ending December 1, 2013. The Board of Directors of Tres Lagos Property Owners Association, Inc., who were lawfully elected to serve two-year terms ending December 1, 2013, or until otherwise replaced, are: James Rose, Barbara Lester, Jeff Lester and Gayle Cerveny.

. . . .

15. There was no evidence or there was insufficient evidence to show property owners' and members' meetings September 1, 2011, and July 21, 2012, were held and votes taken when there was no quorum present. There was evidence to show a quorum was present, either in person or by proxy, at the meetings on September 1, 2011, and July 21, 2012, at which a Board of Directors was elected.

---

(c) The appointment of a board member in violation of this section is void.

(d) This section does not apply to the appointment of a board member during a development period. In this subsection, "development period" means a period stated in a declaration during which a declarant reserves:

(1) a right to facilitate the development, construction, and marketing of the subdivision; and

(2) a right to direct the size, shape, and composition of the subdivision.

(e) This section does not apply to a representative board whose members or delegates are elected or appointed by representatives of a property owners' association who are elected by owner members of a property owners' association.

TEX. PROP. CODE ANN. § 209.00593.

16. The Board of Directors serving on September 1, 2011, continued to serve as the Board of Directors of Tres Lagos Property Owners Association, Inc., until the election of a replacement Board of Directors at the July 21, 2012, meeting. The Articles and Bylaws of Tres Lagos Property Owners Association, Inc. provide that Directors shall serve for a two-year term or until a successor is elected.

. . . .

## CONCLUSIONS OF LAW

. . . .

4. As a matter of law, the Bylaws of Tres Lagos Property Owners Association, Inc. are not a "dedicatory instrument" under Section 202.001(1) or Section 209.002(4) of the Texas Property Code and are not required to be filed for record in the Office of the County Clerk of Franklin County, Texas.

5. As a matter of law, Plaintiffs pleadings did not allege or support a cause of action that Defendant failed to comply with any applicable section of Article 209 of the Texas Property Code and no trial amendment was requested.

. . . .

7. As a matter of law, the election of the board of directors at the July 21, 2012, meeting renders Plaintiffs' argument that a valid board of directors was not in place moot.

Storck initially contends the election of board members was invalid because the Association's members who were not current on their dues were excluded from voting in violation of Section 209.0059(a) of the Texas Property Code, which provides that "[a] provision in a dedicatory instrument that would disqualify a property owner from voting in a property owners' association election of board members or on any matter concerning the rights or responsibilities of the owner is void." TEX. PROP. CODE ANN. § 209.0059(a) (West Supp. 2013).

11

The Association's bylaws state, "The rights of membership are subject to the payment of monthly and special assessments levied by the Association, the obligation of which assessments is imposed against each Owner of, and becomes a lien upon, the Lot against which such assessments are made as provided by the Declaration." The bylaws continue, "The membership rights of any person whose interest in the Properties is subject to assessment, whether or not he or she be personally obligated to pay such assessment, may be suspended by action of the Board of Directors during the period when the assessment remains unpaid . . . ." The bylaws enumerate three types of Association membership rights—voting rights, property rights, and the right of enjoyment of the common properties. Read in conjunction, Sections 2 and 3 of Articles Three and Four of the Association's bylaws permit the board of directors to suspend the voting rights of those members who have outstanding monthly and/or special assessments. Admittedly, only those members who were in good standing were permitted to vote at the July 2012 meeting. At that meeting, only the proxies and votes cast by members in good standing (i.e., those current on their dues) were counted.[10]

The issue before this Court is whether the restricted vote in July 2012, limited to members in good standing, violates Section 209.0059(a) of the Property Code. *See* TEX. PROP. CODE ANN. § 209.0059(a). There is no contention that the limitation on a member's voting rights is contained in any document other than the Association bylaws. Storck contends that this limitation, contained only in the bylaws, is a violation of the Property Code.

---

[10]Approximately twelve members were disqualified from voting on this basis.

"Dedicatory Instrument" is defined as

> each governing instrument covering the establishment, maintenance, and operation of a residential subdivision. The term includes restrictions or similar instruments subjecting property to restrictive covenants, bylaws, or similar instruments governing the administration or operation of a property owners' association, to properly adopted rules and regulations of the property owners' association, and to all lawful amendments to the covenants, bylaws, rules, or regulations.

TEX. PROP. CODE ANN. § 209.002(4) (West Supp. 2013). The trial court concluded that the Association's bylaws are not a dedicatory instrument as defined in this section of the Property Code.[11] We concur in that conclusion. We do not believe the definition of dedicatory instrument in the Property Code was intended to establish a definitive list of documents to be considered dedicatory instruments. Instead, we interpret the phrase "subjecting property to" as modifying "restrictions or similar instruments." The list of various instruments in the statute is included in the definition to indicate the types of documents that make restrictions or other similar instruments into dedicatory instruments. So, for example, an instrument which subjects property to bylaws is a dedicatory instrument, although the bylaws may not fall within this

---

[11]Section 209.0059(a) of the Property Code utilizes the term dedicatory instrument, as that term is defined in Section 209.002(4) of the Code. TEX. PROP. CODE ANN. §§ 209.002(4), 209.0059(a).

In addition, the trial court found that Storck's pleadings did not allege or support a cause of action premised on the Association's failure to comply with any applicable provision of Article 209 of the Texas Property Code, and no trial amendment was requested. This conclusion is erroneous as it applies to Section 209.0059(a) of the Property Code. Assuming the trial court was correct in finding that the issue of Association membership voting rights was not raised by the pleadings (an issue we do not decide), the propriety of the July 2012 vote, including the issue of whether members not current on their dues could be excluded from voting for the Association's board of directors, was tried by consent. The record is replete with testimony and argument regarding this issue. *See* TEX. R. CIV. P. 67 (when issues not raised by pleadings are tried by express or implied consent of parties, they "shall be treated in all respects as if they had been raised in the pleadings"). Failure to amend pleadings "shall not affect the result of the trial of these issues[,] provided that written pleadings, before the time of submission, shall be necessary to the submission of questions . . . ." *Id.* Here, no questions were submitted as the case was tried to the bench. Because the evidence in question was not objected to at trial on the ground that it was beyond the scope of the issues raised by the pleading, a trial amendment was not required. *See* TEX. R. CIV. P. 66.

13

category.[12]  In this case, the "Amended Covenants & Restrictions On and [F]or the Tres Lagos

Development" (dedicatory instrument) specifically requires compulsory membership in the

Association.  The instrument further requires that the Association "shall be governed by the

Articles of Incorporation . . . and by the Covenants & Restrictions and Bylaws of the Association

pursuant thereto and the amendments thereto."  The dedicatory instrument, as described in the

statute, subjects Association property to the Association bylaws.[13]

This interpretation of Section 209.002(4) is consistent with the definition of dedicatory

instrument found in Section 202.001 of the Property Code, which controls the construction and

enforcement of restrictive covenants.  Section 202.001 defines dedicatory instrument as

> each document governing the establishment, maintenance, or operation of a
> residential subdivision, planned unit development, condominium or townhouse
> regime, or any similar planned development.  The term includes a declaration or
> similar instrument subjecting real property to:

---

[12]We note, however, that the Amarillo Court of Appeals found a set of recorded bylaws to be part of the dedicatory instruments that controlled the operation of the homeowners' association and allowed the board to establish, levy, and collect annual assessments in the amount of the lien which attached. *Goddard v. Northhampton Homeowners Assoc., Inc.*, 229 S.W.3d 353, 358 (Tex. App.—Amarillo 2007, no pet.). Here, the bylaws were not filed in the real property records. *See* TEX. PROP. CODE ANN. § 202.006 (West Supp. 2013) (dedicatory instrument has no effect until filed in accordance with this section).

[13]Article One of the dedicatory instrument provides,

> "Association" or "Tres Lagos POA" shall mean and refer to Tres Lagos Property Owners Association, a non-profit incorporated organization which is comprised of the Owners of the Development.  Membership in this organization shall be compulsory and shall be a condition under any deed and/or assignment of any lot within the Development.  Membership in the Association shall pass with the title to the lot.  The Association shall be governed by the Articles of Incorporation adopted & filed with the Secretary of State of Texas August 3, 1984 and by the Covenants & Restrictions and Bylaws of the Association pursuant thereto and the amendments thereto.  All sections of the Development shall function through one Association.
> 
> The directors shall be selected and serve according to the provisions of the Bylaws.  All administrative control over the Development shall be through the Board of Directors and the committees selected by the Board and shall henceforth bind all Owners of lots within the development to the extent allowed by law.

14

(A)    restrictive covenants, bylaws, or similar instruments governing the administration or operation of a property owners' association;

(B)    properly adopted rules and regulations of the property owners' association; or

(C)    all lawful amendments to the covenants, bylaws, instruments, rules, or regulations.

TEX. PROP. CODE ANN. § 202.001(1) (West Supp. 2013). From the wording of this section, it is evident that items (A) through (C) are the same as those items listed in Section 209.002(4) and are merely descriptive of the types of related documents that make any given declaration or similar instrument a dedicatory instrument. Chapter 202 of the Property Code "applies to all restrictive covenants regardless of the date on which they were created." TEX. PROP. CODE ANN. § 202.002(a) (West 2007). We, thus, conclude that the trial court was correct in its determination that the instrument containing the Association's bylaws is not a dedicatory instrument as defined by Section 209.002(4) of the Property Code. TEX. PROP. CODE ANN. § 209.002(4).

This conclusion, though, does not answer the question of whether the restrictive voting provision in the bylaws is prohibited under the statute. To conclude that such a provision in the bylaws is valid, when the Legislature has declared all such provisions in dedicatory instruments void, would essentially eviscerate the purpose of the statute. Here, the dedicatory instrument specifically subjects Association property to the Association bylaws, stating that the Association "shall be governed by . . . the . . . Bylaws of the Association . . . ." The bylaws of the Association effectively suspend a property owner's voting rights when that owner's assessments are unpaid. Because the bylaws have effectively been incorporated into the dedicatory instrument and because the bylaws include a voting restriction which would be invalid if set out

15

directly in the dedicatory instrument, we conclude that the voting restriction in the bylaws is void. *See* TEX. PROP. CODE ANN. § 209.0059(a).

The trial court determined that the evidence was insufficient to show that the 2011 and 2012 meetings "were held and votes taken when there was no quorum present." Conversely, the trial court found that the Association "held an annual meeting of members on September 1, 2011, that was adjourned and reconvened with a quorum present on July 21, 2012." These findings fail for lack of legal and factual sufficiency.

The Association bylaws provide that "[m]embers holding twenty-five (25%) percent of the votes entitled to be cast, represented in person or by proxy," shall constitute a quorum. Further, "[t]he vote of the majority of the votes entitled to be cast by the Members present, or represented by proxy, at a meeting at which a quorum is present shall be the act of the Members meeting." The evidence is uncontroverted that members not current on their dues were excluded from voting. The Association consisted of 274 property owners at the time of trial. Lester testified that 184 members were current on their dues and that the required twenty-five percent quorum was calculated from that number. Because all property owners were entitled to vote in the July 2012 Association board election, the quorum should have been calculated based on the total number of property owners. A quorum of all members entitled to vote would have consisted of 68 property owners. A quorum of only those members current on their dues consisted of 46 property owners. Because a quorum for purposes of the July 2012 election was calculated to be 46 property owners—far less than the 68 owners required for an actual quorum—the evidence conclusively establishes the absence of a quorum. Because the July 2012

16

election was held in the absence of a quorum as provided by the Association's bylaws, the election was invalid. The trial court erred in finding otherwise.[14]

In light of this conclusion, we are faced with the issue of whether the Association was, at some point, simply without authority to act, as alleged by Storck in his motion for declaratory judgment and at trial. The trial court correctly found that under the Association's bylaws, directors shall serve for a two-year term or until a successor is elected.[15] Assuming each of the four directors was elected, they each could presumably continue to serve until a successor is elected. Because the July 2012 election was invalid, no successors were elected at that time. Thus, the four directors would, presumably, continue to serve as directors until such time as a valid election took place.

This is not, however, the scenario with which we are faced. At trial, it was established that two of the directors—Cerveny and Barbara Lester—were appointed by the board. Lester testified that she was appointed to the board of directors in 2011 to fill an empty position. Storck testified that the two appointed board members' terms expired on September 24, 2011. This is the date of the Association meeting that subsequently adjourned and was reconvened in July 2012. Storck admitted that this was his "interpretation." Because the Association failed to conduct a valid election in 2011 or 2012, Storck contends the two appointed board members'

---

[14]Because we conclude that the July 2012 election was invalid, we need not address any remaining arguments concerning the validity of the election.

[15]The bylaws state, "[T]he directors shall be elected at the annual meeting of the Members, except as provided in Section 2 of this Article, and each director elected shall hold office for a term of two (2) years or until his or her successor is elected and qualified." The referenced Section 2 provides, "Any vacancy occurring in the Board of Directors may be filled by the affirmative vote of a majority of the remaining directors though less than a quorum of the Board of Directors. A director elected to fill a vacancy shall be elected for the unexpired term of his or her predecessor in office."

17

terms expired on December 31, 2011. Because Association bylaws require at least a three-member board, Storck contends the Association ceased to function with a valid board of directors on December 31, 2011.

In support of this contention, Storck relies on Section 209.00593(a) of the Property Code, which provides,

> Notwithstanding any provision in a dedicatory instrument, any board member whose term has expired must be elected by owners who are members of the property owners' association. A board member may be appointed by the board to fill a vacancy on the board. A board member appointed to fill a vacant position shall serve for the remainder of the unexpired term of the position.

TEX. PROP. CODE ANN. § 209.00593(a). The statute provides that an appointed board member shall serve for the remainder of the unexpired term of the position. On the evidence before us, we are unable to conclude when the terms of the appointed officers expired. There is no evidence to show when Cerveny was appointed, and the evidence as to Lester shows only that she was appointed to the board in 2011. Most importantly, there is no evidence showing the length of the unexpired terms of the two appointed positions. We acknowledge Storck's testimony that both terms expired on September 24, 2011, but this testimony is simply Storck's opinion or legal conclusion that those terms expired because a members' meeting was held on that date. This is not evidence establishing the length of the unexpired term of service for either of the appointed directors. The evidence does show that an annual meeting was held sometime in 2010 for purposes of voting on board members. There is no evidence as to the date of that meeting.

18

In the absence of evidence showing when Cerveny's and Lester's terms expired, we cannot conclude that the board of directors consisted of only two members at any given point in time. We, therefore, must reject Storck's assertion that the Association ceased to function with a valid board of directors on December 31, 2011.

## III.    The Motion for New Trial Was Properly Denied

Storck filed a motion for new trial alleging, among other things, that Steven J. Cerveny, the husband of Gayle Cerveny (one of the three members of the Association's board as determined by the trial court) operates a business called Garage Doors and More at 287 Timberwood Drive, Mount Vernon, Texas, which is allegedly located within the Tres Lagos subdivision.   In his motion, Storck alleged that, under the doctrine of clean hands, the Association is not entitled to injunctive relief against him, in light of this new evidence. After a hearing, the trial court denied Storck's motion for new trial. We interpret this point of error as a complaint of error regarding the trial court's denial of Storck's motion for new trial.

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam). "Under this standard, we may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles." *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 368 (Tex. App. Dallas—2005, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)).   In our review, we indulge every reasonable presumption in favor of the trial court's refusal of a new trial. *Id.* A party seeking a new trial on the ground of newly discovered evidence must show that (1) the evidence has come to his

19

knowledge since the trial, (2) it was not owing to want of due diligence that the evidence did not come to his attention sooner, (3) the evidence is not cumulative, and (4) the evidence is so material that it would probably produce a different result if a new trial were granted. *In re O.R.F.*, 417 S.W.3d 24, 41 (Tex. App.—Texarkana 2013, pet. denied).

The sole evidence of the existence of a commercial business on subdivision property is a certified copy of an assumed name certificate listing a business name of "Garage Doors & More" with a business address of 287 Timberwood Dr., Mt. Vernon, Texas. The certificate, dated April 15, 2010, indicates that the business owner is Steven J. Cerveny.

The trial took place on April 29, 2013. There was no evidence presented at the hearing on Storck's motion for new trial indicating (1) that this evidence came to Stork's attention since the trial or (2) that it was not owing to want of due diligence that the evidence did not come to Storck's attention sooner. Further, there was no testimony that the business described in the assumed name certificate was actually being operated within the subdivision, or at all. Contrarily, Barbara Lester testified at the hearing on Storck's motion for new trial that, although Cerveny is a resident of Tres Lagos, she was not aware of any business operation at the Cerveny residence. Lester testified that Cerveny does not maintain any kind of a workshop or onsite inventory at his residence in Tres Lagos.

The trial court did not abuse its discretion in overruling Storck's motion for new trial based on this purported newly discovered evidence.

Storck next contends that the trial court erred in overruling his motion for new trial based on alleged perjury by Barbara Lester. This allegation is based on two different complaints, the

20

first of which concerns Lester's position within the Tres Lagos organization. Storck contends that Lester filed an affidavit in a different lawsuit stating that she is the president of the Association. In the trial of the instant case, however, Lester testified that she is the Association's treasurer. At the hearing on Storck's motion for new trial, the trial court took judicial notice of cause number 11,300, where it noted that an affidavit signed by Lester indicated that she marked through the title president and wrote in the title treasurer.

The second alleged incident of perjury by Lester stems from her testimony that a box of records was stolen from the Association. Storck claims that Lester provided different testimony at a hearing on a motion for new trial in cause number 11,300 when she stated that only certain records were stolen, as opposed to an entire box of records. Storck has failed to provide this Court with the alleged testimony from cause number 11,300 on which he relies.

The trial court did not err in overruling Storck's motion for new trial based on alleged perjury.

## IV. Tres Lagos' Counterclaim Was Not Barred by the Bona Fide Innocent Purchaser Doctrine or the Statute of Limitations

Storck contends that the trial court erred in granting relief to Tres Lagos on its counterclaim[16] as such claims were barred by the bona fide innocent purchaser doctrine and the statute of limitations. Storck filed a general denial answer to the counterclaim.

### A. Bona Fide Purchaser for Value Without Notice

---

[16]The trial court ruled, relative to the counterclaim, that the lots Storck purchased in 2008 are subject to all covenants, restrictions, and easements of the subdivision and enjoined Storck from operating a commercial business within the subdivision as such operation violates the covenants and restrictions. Storck was further ordered to pay $4,000.00 in unpaid dues and assessments.

21

A bona fide purchaser is one who acquires property in good faith, for value, and without notice, actual or constructive, of any third-party claim or interest. *See Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (per curiam). The crux of Storck's bona fide purchaser argument relates to the purchase of lots 93 through 97, which he claims was without exceptions or restrictions. The deed to this property states that the tract subject to deed was "formerly known as Lots 93, 94, 95, 96, & 97 of TRES LAGOS SUBDIVISION," and states that "this tract is now a Deplat per Commisioner's [sic] Minutes . . . ." The policy of title insurance covering this property did not include exceptions or restrictions. Storck, thus, contends that he purchased the property in good faith, for value, and without notice of any third-party claims or interests. Based on the assertion that he is a good-faith purchaser for value without notice, Storck asks this Court to reverse the judgment of the trial court as it relates to Tres Lagos' counterclaim.

Storck concedes that the status of a bona fide purchaser for value without notice is an affirmative defense. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (per curiam). Rule 94 of the Texas Rules of Civil Procedure requires a party to plead affirmatively those affirmative defenses listed in the rule "and any other matter constituting an avoidance or affirmative defense." TEX. R. CIV. P. 94. "'If an affirmative defense is not pleaded or tried by consent, it is waived,' and the trial court has no authority to make a fact finding on that issue." *See Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 851 (Tex. App.—Dallas 2005, pet. denied) (quoting *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 327–28 (Tex. App.—Houston [1st Dist.] 1997, pet. denied)); *Matter of Marriage of Collins*, 870 S.W.2d 682, 685 (Tex. App.—Amarillo 1994, writ denied). "The party asserting the affirmative defense bears the burden of

22

pleading and proving its elements." *Compass Bank*, 152 S.W.3d at 851 (citing *Welch v. Hrabar*, 110 S.W.3d 601, 606 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).

Tres Lagos contends that, because Storck did not plead his alleged status as a bona fide purchaser for value, as an affirmative defense to the counterclaim, that defense is waived. Storck counters that the defense claim was pled in his original petition. By definition, an affirmative defense cannot be pled in an original petition. Further, even if it could, Storck did not raise the issue in his original petition.[17]

Storck does not contend that the issue of his status as a bona fide purchaser for value and without notice was tried by implied consent. And, although the record includes testimony on this issue,[18] we decline to find trial by consent on these facts. "Trial by consent applies in the exceptional case where it clearly appears from the record as a whole that the parties tried an unpled issue." *Reed v. Wright*, 155 S.W.3d 666, 670 (Tex. App.—Texarkana 2005, pet. denied) (citing; *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.)). "To determine whether an issue was tried by consent, the court must examine the record not for

---

[17]On review of the record, however, we note that Storck alleged that he was a bona fide purchaser of the 2008 lots in a response to Tres Lagos' motion for summary judgment. Although there is authority to support the proposition that an unpleaded plea in avoidance may serve to preclude summary judgment if it is raised in a summary judgment response and if the opposing party does not object to it in reply or before the rendition of judgment, *Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, LLP*, 404 S.W.3d 75, 86 (Tex. App.—Houston [14th Dist.] 2013, no pet.), a summary judgment was not entered in this case.

[18]Storck testified that he purchased the property, that the title insurance company issued a policy covering the property without restriction, that the property was described in the deed in metes and bounds, and that he was a bona fide purchaser of the property.

On cross-examination, Storck conceded that his deed to the subject property stated that the conveyance was subject to "[a]ny and all restrictions, covenants, conditions and easements, whether for utilities or rights-of-way and whether apparent or a public record . . . relating to the . . . property, and to all zoning laws, regulations, and ordinance of any governmental authorities . . . ." However, he understood that "the deplat by the county commissioners eliminated all of the covenants and restrictions."

23

evidence of the issue, but rather for evidence of trial of the issue." *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.) (citing *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). Here, although the record includes evidence of the issue, it is not at all clear the issue was actually tried. Moreover, while the trial court entered findings of fact, it did not include a finding on this issue. Finally, Storck does not contend the issue was tried by consent. We, therefore, conclude that, because the affirmative defense of Storck's status as a bona fide purchaser for value was not pled in accordance with Rule 94 of the Texas Rules of Civil Procedure, this issue was waived.

### B.     Statute of Limitations

Storck contends that the four-year statute of limitations for filing a claim regarding deed restrictions effectively bars Tres Lagos' claims that the lots Storck purchased in 2008 are subject to the subdivision restrictions. *See Malmgren v. Inverness Forest Residents Civic Club, Inc*., 981 S.W.2d 875, 877 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (actions to enforce restrictive covenants are subject to four-year statute of limitations). This argument is based on the premise that, because the lots in question were purportedly deplatted by the previous owners in 2002, the statute of limitations to enforce the restrictive covenants as to the deplatted property commenced in 2002.

Without addressing the substance of this argument, Tres Lagos contends that, because the statute of limitations was an unpled affirmative defense, it has been waived. *See* TEX. R. CIV. P. 94. There is no dispute that this affirmative defense was not raised in Storck's answer to Tres Lagos' counterclaim. Storck contends, however, that the statute of limitations was pled in his

24

first amended response to Tres Lagos' motion for summary judgment and in his motion to reconsider the ruling on that motion, as well as in his motion for new trial and his first amended motion for new trial. While Storck's amended response to Tres Lagos' motion for summary judgment raised the statute of limitations' defense, that was not a proper Rule 94 pleading in the case. *See* TEX. R. CIV. P. 94; *see also Haase*, 404 S.W.3d at 86 (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991)) ("unpleaded plea in avoidance may . . . serve to preclude summary judgment if it is raised in a summary judgment response and if the opposing party fails to object to it in a reply or before the rendition of judgment"). Because the trial court did not enter a summary judgment, the limited exception enunciated in *Haase* does not apply here.[19] We, therefore, conclude that, because Storck failed to plead the affirmative defense of the statute of limitations in accordance with Rule 94 of the Texas Rules of Civil Procedure, such defense was waived. *See* TEX. R. CIV. P. 94.

---

[19]Tres Lagos' motion for declaratory judgment and/or motion for partial summary judgment as to liability asked the trial court to (1) declare the legal effect of a deplat order entered by the Franklin County Commissioners' Court with respect to Storck's subdivision property and (2) enter a partial summary judgment as to liability establishing that Storck and Storck's deplatted property remain subject to the obligations imposed under the covenants and restrictions applicable to the subdivision and its property owners. The trial court entered an order on counter-plaintiff's motion for declaratory judgment and motion for partial summary judgment as to liability on May 12, 2011. The order declared that "Section 232.008 of the Local Government Code does not grant jurisdiction or authority to the Commissioners Court to remove, cancel, modify or otherwise change, limit or affect the Tres Lagos Subdivision restrictions, covenants or conditions." The order thus declared that lots 93 through 97 of the Tres Lagos subdivision "remain subject to the obligations imposed under the covenants and restrictions applicable to the . . . Subdivision as they existed on such date . . . ." The court took no action on the motion for partial summary judgment as to liability, reserving "any decision on counterdefendant's motion for partial summary judgment as to liability pending resolution of issues of fact that are not otherwise resolved by this declaratory judgment."

25

**V.      The Trial Court Addressed the Alleged Inaction of the Association's Board**

In his final point of error, Storck complains that the trial court abused its discretion in refusing to address Storck's claims regarding the inaction of the Association's board,[20] as alleged in Storck's first amended petition, including (1) the lack of common area maintenance, roadways, fencing, and the Association's swimming pool, (2) the solicitation of proxy votes in violation of the Association's articles of incorporation and bylaws, (3) holding Association meetings in the absence of a quorum, (4) failing to name and/or appoint a registered agent for service of process for the Association, (5) violating the Texas Open Meetings Act by giving improper notice of meetings, (6) failing to obtain and/or maintain liability insurance for the Association's swimming pool, (7) failing to file not-for-profit organization filings required by the Internal Revenue Service, and (8) amending the covenants and restrictions of the Association without a vote by members as is required. Storck asked for an injunction ordering the Association's board to rectify each of the above-listed matters.

Contrary to Storck's complaint, the trial court entered specific findings of fact and at least one conclusion of law addressing the listed complaints.[21] We, therefore, find no merit in Storck's complaint that the trial court abused its discretion in failing to address these complaints. Additionally, the trial court found that there was no evidence and/or that there was insufficient

---

[20]At the hearing, the trial court indicated that "this Court is not going to get into directing the Association on how they are to manage their affairs. . . . That's up to the Association. The members remedy is to vote out the directors and get new directors. Now, if they're legally required or otherwise bound by some of their documents to do something and they have not, then I can take up that issue." The trial court subsequently issued findings of fact and conclusions of law regarding the Association's alleged failure to fulfill its obligations to the membership.

[21]These matters were addressed in findings 11, 12, 15, 17–20, and conclusion 3.

evidence to show Storck would suffer irreparable harm necessitating injunctive relief or for which Storck did not have an adequate remedy at law. This finding is not challenged.

The trial court addressed each of Storck's claims and in all instances found against Storck. Because Storck's complaint in his final point of error is simply that the trial court failed to act and since no issue is raised regarding the propriety of the trial court's referenced findings and conclusions, we overrule Storck's final point of error.

## VI.     Tres Lagos' Appellate Cross-Point

The trial court found that there is an existing gravel drive from Storck's residence that is used for direct access to FM 2723 from lots 95 and 96, through and across the perimeter fence of the Tres Lagos subdivision. The judgment granted Storck the right, at his own expense, to place a gate at the intersection of the existing gravel drive and FM 2723 for ingress and egress. In its sole cross-issue on appeal, Tres Lagos contends that the trial court abused its discretion in granting Storck an easement for ingress and egress over and through the Association's perimeter fence. In support of this contention, Tres Lagos points to the lack of any pleading which might support this relief.

Storck contends that Tres Lagos failed to file a notice of appeal in support of its cross-issue, and therefore that this issue is not properly before the Court. Rule 25.1(c) of the Texas Rules of Appellate Procedure requires a party "who seeks to alter the trial court's judgment" to file a notice of appeal with the trial court and prohibits an appellate court from granting any party who does not file a notice of appeal "more favorable relief than did the trial court except for just

cause." Tex. R. App. P. 25.1(c); *Helton v. R.R. Comm'n of Tex.*, 126 S.W.3d 111, 120 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Tres Lagos asks this Court to modify the judgment by denying Storck's access easement through the perimeter fence adjoining FM 2723. This request seeks to alter the trial court's judgment. Accordingly, Tres Lagos was required, under Rule 25.1(c), to file a notice of appeal in order to raise its cross-point on appeal. No such notice of appeal was filed. Because Tres Lagos asks for greater relief than was granted by the trial court, it was required to show "just cause" for failing to file a notice of appeal. *See* Tex. R. App. P. 25.1(c). No such showing was made or even attempted. Because Tres Lagos has not met the requirements of Rule 25.1(c), its cross-issue may not be considered by this Court, and is, thus, overruled.

## VII. Conclusion

We reverse the trial court's judgment to the extent that it finds that the July 2012 board of directors' election of the Tres Lagos Property Owners Association, Inc., was valid and render judgment that this election was invalid.

We affirm the trial court's judgment in all other respects.

Jack Carter
Justice

Date Submitted:     June 11, 2014
Date Decided:      August 8, 2014

28