

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00108-CV

MICHAEL REID

APPELLANT

V.

UDR TEXAS PROPERTIES, LLC;
UDR TEXAS PROPERTIES, LLC,
SUCCESSOR TO UDR TEXAS
PROPERTIES, LP; UDR THE
CLIFFS, LLC; UDR, INC.; AND
WESTERN RESIDENTIAL, INC.

APPELLEES

----------

## FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY
## TRIAL COURT NO. 2012-007946-3

----------

## MEMORANDUM OPINION[1]

----------

Appellant Michael Reid appeals from the trial court's take-nothing final

judgment on all of Reid's claims against appellees UDR Texas Properties, LLC;

---

[1]*See* Tex. R. App. P. 47.4.

UDR Texas Properties, LLC, successor to UDR Texas Properties, LP; UDR The Cliffs, LLC; UDR, Inc.; and Western Residential, Inc. (collectively and singularly, UDR).[2] He also appeals from the trial court's judgment awarding UDR damages on its counterclaim against him. Because Reid points us to no reversible error in the trial court's judgment, we affirm. *See* Tex. R. App. P. 43.2(a).

## I. BACKGROUND

### A. INITIAL LEASE

Reid lived at a UDR property, The Cliffs, under a lease agreement for a term that was to end December 27, 2008, at a monthly rent of $733. Reid was required to pay the monthly rent no later than the third day of the month to avoid incurring late charges. The lease provided that its term would automatically renew on a month-to-month basis if Reid or UDR failed to give at least sixty days' written notice of termination or intent to move out. If UDR gave Reid notice of a rent increase at least five days before the sixty-day notice period expired, the increase would automatically apply unless Reid timely provided the required notice.

### B. OPTION TO RENEW AND NOTICE OF INTENT TO MOVE OUT

On October 13, 2008, UDR sent Reid a letter, giving him the option to renew his lease at varying rental rates that depended on the length of the lease

---

[2]As UDR is careful to point out in its appellate briefing, Reid failed to proffer evidence in the trial court that the UDR entities are a single enterprise subject to joint liability; however, because this issue is not a necessary determination in this appeal, we will refer to Appellees collectively as UDR.

term. The letter stated that if Reid either did not sign a new lease or failed to provide a sixty-day notice of his intent to move out, the lease term would automatically convert to a month-to-month lease at a rental rate of $924 per month. On October 27, 2008, Reid signed the letter, wrote on the letter that he would "vacate at the end of current lease term," and hand-delivered the letter to UDR's leasing office. The next day, Reid signed a "Resident's Notice of Intent to Move Out," which was a form notice produced by the Texas Apartment Association, indicating that he would move out of the apartment on December 27, 2008. On November 25, 2008, Reid paid $638 to UDR, which represented a prorated rent amount covering December 1 through December 27, 2008. This amount was also reflected in the notice-of-intent form that Reid had signed on October 28, 2008.

## C. REID'S WITHDRAWAL OF NOTICE OF INTENT AND UDR'S NOTICE TO VACATE

On December 1, 2008, Reid informed UDR's leasing office that he wanted to cancel his move-out notice. Christina Feick, a community manager for UDR, drew a diagonal line through the form that Reid had signed on October 28, 2008, and wrote "cancel" above the line. Both Reid and Feick signed the form by the word "cancel." Reid then initialed the October 13, 2008 letter, indicating that he would renew his lease for six months at a monthly rental rate of $755. Reid also agreed to pay $97 for the rent due for December 28 through 31, 2008, which was handwritten on same letter. Feick signed and dated the letter by Reid's renewal choice. Accordingly, UDR took Reid's apartment off the rental market. A new

3

lease was prepared, reflecting the new lease term and rental rate, but Reid never signed this lease or paid the remaining rent due for December 2008.

On December 5, 2008, UDR sent Reid a notice to vacate, noting that he owed rent for December 2008—the amount due for December 28 through December 31, 2008—and stating that his "rights of occupancy and possession are . . . terminated."[3] On December 27, 2008, Reid moved out of the apartment and dropped off his keys at UDR's leasing office, without giving UDR his forwarding address. But because UDR believed that Reid had not complied with the notice requirements of his lease and the October 13, 2008 letter that had been modified on December 1, 2008, UDR considered Reid to be a month-to-month tenant as of January 2009. On January 10, 2009, UDR sent Reid a "[f]inal account statement" to his address at The Cliffs, reflecting that he owed $2,284.25, which included credits and fees due as well as $924 in rent—the month-to-month rate noted in the October 13, 2008 letter—for both January 2009 and February 2009. In late February 2009, UDR leased Reid's former apartment to a new tenant.

### D. ALLEGATIONS AND TRIAL

On December 6, 2012, Reid filed suit against UDR and raised claims for violations of the property code, breach of contract, failure to properly remit his

---

[3]Under the lease, this termination of his occupancy and possession rights based on his default did not release him from "liability for future rent or other Lease Contract obligations."

security deposit, violation of the Debt Collection Fair Practices Act, fraud, fraudulent inducement, retaliatory eviction, and violations of the Deceptive Trade Practices Act.[4]  Reid sought damages, including for his emotional distress based on UDR's alleged intentional conduct, and the recovery of attorney's fees.  On July 5, 2013, the trial court granted Reid's counsel's motion to withdraw based on "[c]onflicts."[5]  At no point in the trial court or in this court has Reid asserted that he is indigent and entitled to proceed without advance payment of costs.  Reid amended his petition twice—once on February 7, 2014, and once on September 26, 2014.[6]  UDR filed a counterclaim for breach of contract on September 30, 2014.

These claims were tried to the court in a two-day trial, occurring on October 15 and November 24, 2014.  After Reid rested his case, the trial court directed a verdict in UDR's favor on Reid's claims for violations of the property

---

[4]Our recitation of Reid's claims is based on his second amended petition, which was filed on September 26, 2014.  *See* Tex. R. Civ. P. 65.

[5]The clerk's records reflect that other than UDR's original answer, no documents were filed between the date Reid filed his original petition and the date his counsel moved to withdraw seven months later.  There was some indication at a pretrial hearing that Reid's counsel and UDR made some settlement attempts and conducted extensive discovery before counsel withdrew.

[6]Reid also filed two supplemental petitions in November 2014 that attempted to add new claims against UDR, but Reid filed them after trial began in October 2014 and without leave of court; thus, they were untimely.  *See* Tex. R. Civ. P. 63, 66.  *See generally Retzlaff v. Tex. Dep't of Crim. Just.*, 135 S.W.3d 731, 737 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (op. on reh'g) ("[A] supplemental pleading is not an appropriate method of stating a new cause of action . . . .").

5

code, retaliatory eviction, and fraudulent inducement. *See* Tex. R. Civ. P. 268. After UDR rested and both sides closed, the trial court rendered a take-nothing judgment on Reid's remaining claims and concluded that Reid had breached the lease, entitling UDR to recover $1,939.05[7] in actual damages and $3,000 in attorney's fees. The trial court signed a final judgment, reflecting these amounts, on December 4, 2014.

Reid filed a request for findings of fact and conclusions of law; a motion for new trial; and a motion to modify, correct, or reform the judgment. *See* Tex. R. Civ. P. 296, 320, 329b. The trial court entered findings and conclusions in support of its judgment and specified that Reid had failed to introduce sufficient evidence as to at least one element of each of his pleaded claims and that he had breached the lease with UDR, entitling UDR to its damages and attorney's fees. Reid's motion for new trial and motion to correct the judgment were overruled by operation of law. *See* Tex. R. Civ. P. 329b(c), (g).

### E. APPELLATE ALLEGATIONS

Reid now appeals and argues in several issues, which he appears to group under four headings, that the trial court erred by failing to continue the trial at his request and to grant further discovery, by not concluding that UDR's breach-of-contract counterclaim was time-barred, by failing to find that UDR

---

[7]This amount represented two months' rent (at $733 per month) plus $623.05 for a "relet fee" minus the $150 security deposit Reid paid at the beginning of the lease term.

6

breached the lease, and by finding that Reid had breached the lease. Reid's brief is difficult to understand and includes few citations to the record. We were unable to precisely identify which findings Reid attacks or on what specific bases he argues they and the attendant conclusions were in error; but, we will address Reid's issues as he appeared to brief them—as four main issues attacking the trial court's failure to grant a continuance and extend discovery based on his lack of notice of UDR's counterclaim, the trial court's failure to apply limitations to UDR's counterclaim, and the trial court's conclusions that Reid breached the lease but that UDR did not. *See* Tex. R. App. P. 38.9. Although Reid represented himself at trial and does so again on appeal, he is held to the same standards as is a licensed attorney. *See In re P.S.*, No. 02-16-00008-CV, 2016 WL 6277374, at *3 (Tex. App.—Fort Worth Oct. 27, 2016, no pet. h.).

## II. CONTINUANCE

Reid asserts that the trial court erred by failing to continue the trial setting at his request because he did not receive timely notice of UDR's counterclaim. *See* Tex. R. Civ. P. 63, 251. Reid filed suit in December 2012. UDR filed its counterclaim on September 30, 2014. The first day of trial was October 15, 2014. On October 14, 2014, Reid moved to continue the trial, arguing that he needed more time to address UDR's counterclaim and to conduct further discovery. When the trial court called the case for trial the next day, Reid requested "additional discovery" and again asked for a continuance on the ground that UDR's counterclaim "operates as a surprise" because it "was filed 15

7

days before the trial date." The trial court denied Reid's motion for continuance as untimely under the court's local rules and stated that UDR's counterclaim did not operate as a surprise to Reid. *See* Tex. R. Civ. P. 63; Tarrant (Tex.) Civ. Cts. Loc. R. 3.02.

We review the denial of a motion for continuance for an abuse of discretion. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). Reid apparently argues that because he did not receive forty-five days' notice of UDR's counterclaim as required by rule 245, the trial court had no discretion to deny the continuance and was required to grant further discovery. *See* Tex. R. Civ. P. 245. But rule 245 applies to the trial court's notice to the parties of the scheduled date for trial, which Reid does not challenge. Reid's motion for a continuance was untimely filed, as found by the trial court; therefore, the trial court did not abuse its discretion by denying Reid's motion, which was filed the day before trial began. *See In re M.D.W.*, No. 02-13-00013-CV, 2013 WL 3326664, at *2 (Tex. App.—Fort Worth June 27, 2013, pet. denied) (mem. op.).

### III. LIMITATIONS

Reid also argues that the trial court erred by failing to find that UDR's counterclaim was barred by limitations because it filed its counterclaim on September 30, 2014, which was more than four years after its claim accrued in January 2009. Limitations is an affirmative defense. *See* Tex. R. Civ. P. 94. As such, Reid had the burden to plead and prove this defense to UDR's

8

counterclaim. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). An affirmative defense that is not pleaded is waived. *See Caston v. Wiley*, No. 14-14-01001-CV, 2016 WL 3131666, at *5 (Tex. App.—Houston [14th Dist.] June 2, 2016, no pet.) (mem. op.). At no point before the trial court's final judgment did Reid plead or attempt to prove the affirmative defense of limitations in response to UDR's counterclaim, and the issue was not tried by consent.[8] In response to UDR's pleaded affirmative defense of limitations regarding Reid's claims, Reid contended that limitations should be tolled; however, Reid never raised limitations as to UDR's counterclaim until his motion for new trial. This was too late to equate to an affirmative pleading raising this defense as to UDR's counterclaim. *See Storck v. Tres Lagos Prop. Owners Ass'n*, 442 S.W.3d 730, 745 (Tex. App.—Texarkana 2014, pet. denied); *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 814–15 (Tex. App.—Dallas 2008, no pet.). Thus, we cannot conclude that the trial court erred by failing to apply an affirmative defense that Reid never properly pleaded.[9]

---

[8]On the first day of trial, UDR's counsel stated, "[Reid] filed an affirmative defense of statute of limitations this morning, I believe." The clerk's records however show that nothing was filed on the first day of trial. The day before trial, Reid filed an answer to UDR's counterclaim and an emergency motion to continue but did not plead the affirmative defense of limitations in either filing.

[9]Even though UDR admits in its brief that its counterclaim was barred by the applicable statute of limitations, we are not bound by this concession and must independently determine as a matter of law whether the judgment contained reversible error. *See, e.g.*, *Colo. Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 622, 116 S. Ct. 2309, 2319 (1996) ("[W]e are not bound to decide a matter of constitutional law based on a concession by

## IV. BREACH OF THE LEASE

Reid finally argues that the trial court erred by concluding that he had breached the lease and that UDR, by issuing the notice to vacate, had not. He first asserts that UDR's notice to vacate canceled the lease, precluding UDR's attempt to recover for Reid's alleged breach of it. The trial court found that Reid failed to properly and timely notify UDR that he intended to move out and that although Reid vacated the apartment after receiving UDR's notice to vacate, UDR was entitled to damages arising from Reid's prior breach.

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). As best we can tell, Reid contends that the trial court's findings and conclusions regarding breach are supported by legally insufficient evidence.[10] Accordingly, we may sustain his contentions only if

---

the particular party before the Court as to the proper legal characterization of the facts."); *White v. Moore*, 760 S.W.2d 242, 243–44 (Tex. 1988) (concluding will language ambiguous despite parties' agreement that will was unambiguous); *Jackson Hotel Corp. v. Wichita Cty. Appraisal Dist.*, 980 S.W.2d 879, 881 n.3 (Tex. App.—Fort Worth 1998, no pet.) (holding parties could not concede that motion was timely filed in trial court because parties cannot concede necessary question of law (citing *Haas v. Voigt*, 940 S.W.2d 198, 201 n.1 (Tex. App.—San Antonio 1996, writ denied))).

[10]Reid consistently asserts that he established UDR's prior, material breach "as a matter of law," that UDR failed to establish its counterclaim "as a matter of law," or that the judgment was erroneous "as a matter of law." Although Reid states in an isolated heading that the evidence was "both legally and factually sufficient" to show UDR materially breached the contract, the tenor of

(1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g).

Here, the trial court heard evidence that Reid had failed to timely and properly notify UDR that he intended to move out of the apartment as required by the lease. Under the lease, therefore, UDR was entitled to issue a notice to vacate to Reid while still enforcing its right to collect future rental payments due, which it did. UDR does an admirable job of reciting the specific evidence supporting each of the trial court's necessary findings supporting its judgment and of attempting to refute Reid's inscrutable arguments. It would not aid judicial economy to repeat UDR's apt arguments that the evidence regarding breach was sufficient other than to state that Reid has failed to establish that the evidence was legally insufficient to support the trial court's findings and attendant conclusions under any of the *Castillo* factors.

---

his arguments is that he established his claims as a matter of law and that no evidence supported UDR's counterclaim, i.e., he challenges the legal sufficiency of the evidence to support the trial court's findings and conclusions.

## V. CONCLUSION

Concluding that there is no error in the trial court's judgment, we overrule Reid's issues and affirm the trial court's judgment.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

DELIVERED:  November 23, 2016