

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00101-CV
_____

.39 ACRES, .748 ACRES, AND .5 ACRES
(WITH IMPROVEMENTS) IN THE J. JOHNSON SURVEY,
MARION COUNTY, TEXAS, AND A .22 CALIBER
RUGER SEMI-AUTOMATIC PISTOL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 276th Judicial District Court
Marion County, Texas
Trial Court No. 0500127

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Henry Doke appeals from a judgment after a bench trial of the forfeiture pursuant to Chapter 59 of the Texas Code of Criminal Procedure of three contiguous tracts of .39 acres, .748 acres, and .5 acres in Marion County. Although a .22 caliber Ruger pistol is also subject to the forfeiture proceedings, no mention is made of it in the proceedings except to declare its forfeiture.

Some kind of establishment generally known in the area as the "Dew Drop Inn" was located in Marion County, Texas. The evidence adduced at trial never fully developed the nature of any overt legal business activity which was represented to the public to be conducted on the premises, but it is apparent that it was a gathering place of sorts and that it seemed to have been attractive to people having criminal records. Suffice it to say that, judging from the criminal records of the patrons of the business and Doke's renters of the place, the Dew Drop Inn was never intended to be a competitor of the Chuck E. Cheese family fun restaurants.

On appeal, Doke raises five issues, each of which deals with the sufficiency of the evidence as to different elements which the State was obligated to prove in urging the forfeiture or which Doke was obligated to show in combating the forfeiture.[1]

More specifically than previously mentioned, the issues raised by Doke on appeal are:

(1)     That the acquittal of Lamarcus Morton raised a presumption pursuant to Article 59.05 of the Texas Code of Criminal Procedure that the property is nonforfeitable and that there was no

_____

[1]One of these, issue number four, purports to deal with whether only one of the three tracts of land (as opposed to all three) should have been the subject of forfeiture.

2

evidence raised to rebut that presumption. *See* TEX. CODE CRIM. PROC. ANN. art. 59.05 (Vernon 2006).

(2)     That there was no evidence that Doke was not an "innocent owner" of the Dew Drop Inn as defined by Article 59.02(h)(1)(C) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 59.02(h)(1)(C) (Vernon 2006).

(3)     That the evidence was factually insufficient to prove that the realty was subject to forfeiture.

(4)     That any forfeiture should include only the tract of realty upon which the domed building (the only site on the property wherein drugs were located) is located and not the other two parcels of land.

(5)     That there is no evidence that the realty described in the petition is the same property allegedly used in the commission of a felony which would generate a cause of action for forfeiture.

**EVIDENCE AT TRIAL**

At the trial to the court, it was shown that Ricky Blackburn (who had previously been employed with the Ark-La-Tex Narcotics Task Force) spoke with Doke on two occasions about reputed drug use at the Dew Drop Inn before having obtained a search warrant and conducting the drug raid which resulted in the discovery of cocaine on the premises. During the first interview, in April 2005, Blackburn mentioned the reported drug use at the Dew Drop Inn and called Doke's attention to the detritus of drug use scattered about the premises. On the second of those interviews,

3

one of the participating officers mentioned to Doke near the beginning of their conversation that the property could be subject to forfeiture. Doke, who distrusts law enforcement officers, insisted on videotaping the balance of the interview. Present with Doke at the second interview was Terrance "Toot" Banks, who was represented as being the person who ran the Dew Drop Inn; Banks had at least one previous conviction of possession of a controlled substance and had previously assaulted one of the interviewing officers during a clandestine drug operation in which the officer had participated.

After the interviews, on June 17, 2005, a confidential informant working with the Ark-La-Tex Narcotics Task Force purchased cocaine from Banks at the Dew Drop Inn.

After these encounters, Blackburn and others obtained a search warrant to the Dew Drop Inn and conducted a drug raid on the premises on June 30, 2005, during which cocaine was found dissolved in a liquid in a microwave oven that was located in the "dome" building on the premises, a building on the premises which is a geodesic dome structure with projecting arms which radiate from it. Rathel Doddy was found with rock cocaine on his person in a nearby structure on the Dew Drop Inn premises. In addition, there was drug paraphernalia located in and around the "smoke house" structure located elsewhere on the site and the grounds were littered with small plastic bags, propane lighters, steel wool, and other items commonly used in the drug culture. The drug task force arrested four individuals for possession of controlled substances, those being Lamarcus Morton, Frederick Hopkins, and Jeremy Byrd (found outside the dome building), and Doddy. Morton went

4

to trial before a jury and was acquitted; the charges against Hopkins, Byrd, and Doddy were dismissed.

Before the raid and the arrests, Doke had never had a written lease agreement with a tenant, preferring month-to-month oral rental agreements of his various rental properties on the basis of, "If you don't pay, you don't stay." Subsequent to the raid which precipitated the forfeiture proceedings, Doke had instituted a policy of obtaining written lease agreements which admonished his tenants to refrain from unlawful conduct on the demised premises.

At a time before the raid occurred, Doke had rented the Dew Drop Inn to Gloria Robbins, who had been twice previously convicted of delivery of a controlled substance, and to Charles Melvin Douglas, convicted of delivery of a controlled substance in 2003. In the immediately-preceding five-year period, there had also been other tenants, some of whose names Doke indicated that he could not remember. At the time of the raid and arrests, Doke was renting the place to Arthur C. Gregory, who was the father of Morton. Morton likewise had previous drug convictions and was one of those arrested as a result of the drug raid. Doke further testified that he had no reason to believe that drugs were being used or sold on the Dew Drop Inn property and that he would not have permitted it had he known. He also testified that the three parcels of property described on tax renditions to which reference was made on the petition for forfeiture as being the .39 acres, .748 acres, and .5 acres were collectively known as the Dew Drop Inn property; the entire premises were rented as a whole entity.

5

The State called Blackburn, Johnny Phillips, Lori McCullough, Harry Washington, Lance Cline, Jeff McCullough, and Dale Sherrill, all law enforcement officers who had worked with the Ark-La-Tex Narcotics Task Force, as witnesses. Speaking generally of the testimony of these witnesses, their testimony regarded the general reputation of the Dew Drop Inn and an adjacent business (The Arcade) as drug hangouts, the facts of prior contacts between Blackburn and Doke regarding rumored drug use on the property, and the character and reputation of the tenants and customers of the Dew Drop Inn. Each of the officers who participated in the drug raid testified about his respective role in the raid, there having been allegations by Doke of wanton damages to the buildings and their contents by law enforcement officers during the raid. In addition, Lori McCullough testified that as a member of the Narcotics Task Force that she had videotaped a drug purchase at The Arcade and that Doke was reflected on that videotape as then being present and having been a witness to the sale and purchase of drugs. Others testified about the "smoke house" on the Dew Drop Inn property, which was equipped with makeshift curtains to hold in the fumes when cocaine was being consumed on the premises (a setup which they indicated was often found in places where illicit drugs were smoked) and regarding the debris from drug use which was liberally scattered over the Dew Drop Inn grounds.

There were findings of fact and conclusions of law entered by the trial court. Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's

6

findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

As the trial court is the sole trier of fact, it is free to resolve any conflicts or inconsistencies in the evidence. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *City of Houston v. Harris County Outdoor Adver. Ass'n*, 879 S.W.2d 322, 331 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Therefore, "great deference must be given to the judge's determination of the witnesses' credibility and the weight of their testimony." *Slusher v. Streater*, 896 S.W.2d 239, 243 (Tex. App.—Houston [1st Dist.] 1995, no writ).

**BURDEN OF PROOF AS TO FORFEITABILITY AND INNOCENT OWNER DEFENSE**

There are two issues, the resolution of which in the circumstances of this case, are closely related. These involve a determination as to whether the assets themselves are forfeitable and whether the innocent owner defense can be interposed. In this case, the evidence relating to these issues are closely akin because both of them involve the actual or constructive knowledge of certain facts by the owner. Accordingly, the statutory bases from which these issues arise are mentioned and then the facts which relate to them are applied.

1.      Forfeitability

An action for forfeiture of contraband is a civil proceeding in which the State has the burden of proving by a preponderance of the evidence that property is subject to forfeiture. TEX. CODE CRIM. PROC. ANN. art. 59.05(b).[2] Although a final conviction on the charges giving rise to the forfeiture action is not required for the forfeiture to take place, an acquittal on those charges raises a presumption that the property or interest that is the subject of the hearing is nonforfeitable, a presumption that can be rebutted by "evidence that the owner or interest holder knew or should have known that the property was contraband." TEX. CODE CRIM. PROC. ANN. art. 59.05(d) (Vernon Supp. 2007).

Pursuant to Article 59.01 of the Texas Code of Criminal Procedure, "contraband" is defined as being property of any nature, including real, personal, tangible, or intangible, that is used in the commission of any first- or second-degree felony under the Texas Penal Code and a wide variety of other criminal activities specified in the statute. TEX. CODE CRIM. PROC. ANN. art. 59.01(2) (Vernon Supp. 2007).

It is uncontroverted that there was an acquittal of Morton and a dismissal of charges arising from the drug raid against the others. Therefore, under the statutory scheme, a presumption would rise under Article 59.05(d) that the property is nonforfeitable. *See* TEX. CODE CRIM. PROC. ANN. art. 59.05(d). The State must then, in addition to proving that the property is contraband, present

---

[2]An action for forfeiture is "remedial in nature and not a form of punishment." TEX. CODE CRIM. PROC. ANN. art. 59.05(e).

evidence that Doke either knew or he should have known that the property was contraband. Although the statute does not specify the level of proof which is required of the State to rebut that presumption, both parties on appeal presume that the trial court's conclusion that the presumption was rebutted should be reviewed under a "no evidence" framework.

2.       "Innocent Owner" Defense

Article 59.02(h)(1)(C) of the Texas Code of Criminal Procedure provides that an owner or interest holder's interest in property may not be forfeited if it is shown by a preponderance of the evidence that the owner was not a party to the offense giving rise to the forfeiture *and* the contraband "was used or intended to be used without the effective consent of the owner or interest holder in the commission of the offense giving rise to the forfeiture." TEX. CODE CRIM. PROC. ANN. art. 59.02(h)(1)(C).

Forfeitures under Chapter 59 of the Texas Code of Criminal Procedure usually involve criminal charges brought against the person whose property is being forfeited. That, however, is not the case with Doke and the Dew Drop Inn. As mentioned before, Doke was never charged with any crime and, indeed, was absent from the premises when the drug raid occurred and the illicit drugs were found and seized. Rather, Doke was the owner/landlord of the realty and was never charged with any criminal offense in the incident. This affects the burden of proof as to the forfeitability of the contraband.

9

In defense against the forfeiture, Doke complains that there was no proof presented at trial that he was not an innocent owner of the Dew Drop Inn and that, conversely, he had presented sufficient evidence of his innocent owner status.

3.      Evidence Relating to Forfeitability and the "Innocent Owner" Defense

Due to the factual circumstances of this case, both the issue of forfeitability of the contraband and the innocent owner defense are tied to the facts of the involvement of knowledge of Doke to the use of the contraband property.

Eschewing a reiteration of the evidence recited above, the evidence at trial shows that Doke was given ample warning by law enforcement officers before the drug raid of the existence of continuing likely criminal drug activity being conducted at the Dew Drop Inn; Doke apparently ignored those warnings and did nothing to ameliorate the situation, despite the fact that each of the various operators of the Dew Drop Inn was on a month-to-month lease which Doke could have easily terminated. Doke continued to lease the property to unsavory characters and ignore the evidence of drug activities being conducted on the property. Figuratively closing his eyes and covering his ears did not exculpate Doke from the forfeiture consequences of allowing the illicit activity to continue on his property any more than the rent-by-the-hour hotel owner would excuse himself of obvious acts of prostitution taking place in the rooms that he rents. The law does not allow Doke to simply assume the posture of a mythical ostrich with his head in the sand, ignoring the use of his property as a drug haven and thereby avoid the consequences of seizure. The evidence the State presented

10

showed that Doke either knew of the activities which were taking place at the Dew Drop Inn which rendered the property as contraband or that if he did not know of these activities, he should have known of them.

Doke attempted to counter by presenting testimony that he had been a regular whistle-blower in times past as to criminal drug activity which was alleged to have been a regular happening at The Arcade and he commented rather bitterly at trial of the lack of response by law enforcement entities to those complaints. However, there was no evidence that he ever complained to either law enforcement officers or to his various tenants of any of the activities of the customers (or the lessees/operators) of the Dew Drop Inn. These past complaints of five years before to law enforcement entities could just as easily have been prompted by a desire on the part of Doke to damage his competitor as it could have been a civic-minded plea for law enforcement; it presents little or no evidence that Doke was interested in discouraging drug activities at the Dew Drop Inn, only that he was attempting to have law enforcement agencies closely investigate the activities of the patrons of The Arcade.

**STANDARD OF REVIEW**

Legal and factual sufficiency of the evidence standards of review govern appeals of nonjury trials on the merits. *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992). A legally correct judgment based on findings of fact made after a trial on the merits cannot be set aside on appeal if the findings are

11

supported by sufficient evidence. *Harris County Flood Control Dist. v. Shell Pipeline Corp.*, 591 S.W.2d 798, 799 (Tex. 1979). A court of appeals should consider whether disputed evidence is such that a reasonable fact-finder could not have resolved that disputed evidence in favor of its finding. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). A court of appeals should consider whether disputed evidence is such that a reasonable fact-finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

If a party is attacking the factual sufficiency of an adverse finding on an issue to which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. Doke failed to do so. As shown by the previous summary of the evidence presented, there is factually sufficient evidence presented to reveal that the Dew Drop Inn had become contraband by its use in the crimes which were described and that Doke knew or should have known of continuing activity which had caused it to become forfeitable contraband. Therefore, we deny Doke's points of error concerning the factual sufficiency of the evidence.

**FORFEITURE OF ONLY PART OF PREMISES**

Doke raises an issue on appeal that while there were three tracts of land involved in the forfeiture action, drugs were found located on only one of the three parcels (the one upon which the

12

"dome" building was located); as a result, if there is a forfeiture permitted, only the tract of land upon which the dome building was located is subject to forfeiture.

Since all of the evidence at trial spoke of the realty conjunctively as the Dew Drop Inn property without any differentiation between one tract or another, one could liken it to a circumstance in which cocaine was found inside the spare tire of a car and the owner of the car maintaining that only the spare tire (not the entire car) could be declared contraband and, therefore, forfeitable.

Although there are three tracts of land mentioned in the action for forfeiture, Doke himself testified that the three parcels of land constituted one entity which is commonly known as the Dew Drop Inn, an appellation used in the description of the property being forfeited. Doke identified the listings of the three parcels by their identification numbers as shown on the tax rolls and acknowledged that they were the Dew Drop Inn property. Further, the issue of carving one of the tracts from the others is never mentioned in any trial pleadings or by any evidence presented by Doke at trial, this issue being first mentioned in Doke's motion for new trial. Even then, neither in his motion for new trial nor in his appellate brief, does Doke identify which of the three parcels comprising the Dew Drop Inn contained the dome building. Accordingly, if either the trial court or this Court were of the opinion that the order of forfeiture could attach to only the parcel upon which the dome building is situated, it would be impossible from the evidence in the record to do so. It would have been Doke's duty to show that the Dew Drop Inn was a severable tract (and not a single

entity), only a portion of which was forfeitable. Having failed to do so, Doke waived this claim. We overrule this point of error.

## DESCRIPTION OF FORFEITED PROPERTY

It is noted that the disposition of Doke's points of error may be something of a hollow victory for the State. The forfeiture is effective as to whatever is described in the order of forfeiture. However, in looking at the pleadings, the proof, and the order of forfeiture entered by the court, they give the reader pause to wonder whether it describes any real estate on the face of the Earth. The following descriptions of the property the subject of forfeiture were employed:

[T]he following property, commonly known as the Dew Drop Inn, Highway 155, Marion County, Texas:

Being .748 of an acre, a part of the J. Johnson Survey, Abstract 220, as described in Volume 541, Page 524, on instrument dated December 30, 1991, Marion County, Texas and being further identified on the tax rolls and records of Jefferson Independent School District and account no. 0000220076000200.

Being .390 of an acre, a part of the J. Johnson Survey, Abstract 220, as described in Volume 544, Page 862, on instrument dated June 12, 1992, Marion County, Texas, and being further identified on the tax rolls and records of Jefferson Independent School District and account no. 00002200760000000.

Being .500 of an acre, a part of the J. Johnson Survey, Abstract 220, as described in Volume 582, Page 16, on instrument dated June 18, 1996, Marion County, Texas, and being further identified on the tax rolls and records of Jefferson Independent School District and account no. 000022000390000000.

14

Although the descriptions employed make mention of volumes and pages of some set or sets of documents somewhere (apparently for the purpose of providing descriptive elements by reference to other writings), they do not identify the set or sets of documents to which they refer.

The rule for the determination of the sufficiency of a description has a long history and is set out succinctly in *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972): "To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty."

Although there does not appear to be any caselaw in Texas which deals directly with the sufficiency of the description of real estate employed in a forfeiture action pursuant to Chapter 59 of the Texas Code of Criminal Procedure, there are other kinds of takings which require sufficient descriptions to be used. In cases of eminent domain, the property description must be described with reasonable certainty, *Wooten v. State*, 142 Tex. 238, 177 S.W.2d 56 (1944), and the standards for adequacy of a description are tested by the standards used for a description in a deed, *Coastal Industrial Water Authority v. Celanese Corp.*, 592 S.W.2d 597, 600 (Tex. 1979). The description employed must be sufficient enough that "a surveyor could go upon the land and mark out the land designated." *Wooten*, 177 S.W.2d at 57. In the foreclosure of an ad valorem tax lien, "The general rule is that a judgment for foreclosure of a tax lien upon real estate which, though aided by the judgment roll, fails to describe a definite tract of land is void." *Arnold v. Crockett Indep. Sch. Dist.*,

404 S.W.2d 27, 28 (1966) (citing *Adams v. Duncan*, 147 Tex. 332, 215 S.W.2d 599 (1948); *Greer v. Greer*, 144 Tex. 528, 191 S.W.2d 848 (1946)).

In looking at the description of the realty which was ordered to be forfeited and weighing that description for the tests for sufficiency, the question then arises: "What was forfeited?"[3]

However, except as a challenge to the search warrant giving rise to the discovery and seizure of the illicit drugs found on the premises, Doke did not raise any issue of descriptive deficiency in his pleadings, at trial, in his motion for new trial, or in his appellate brief except calling attention to the omission of dashes in the numbers used in tax office records (an omission which we find inconsequential and not determinative).[4] As a result, he did not preserve this for appeal[5] and if error exists in regard to this matter, it is unassigned error. Only in rare cases will unassigned error be considered, these in circumstances considered containing fundamental error, such as situations in which the reviewing court does not have jurisdiction of the case. *See McCauley v. Consol. Underwriters*, 157 Tex. 475, 304 S.W.2d 265, 266 (1957);[6] *see also In re B.L.D.*, 113 S.W.3d 340,

---

[3]A corollary question a land title researcher might ask subsequently when reviewing the order of forfeiture alone might also be, "Whose interest was forfeited?" The order does not recite this.

[4]Since a conviction on an underlying charge is not a predicate to proceeding on a civil forfeiture, it would hardly seem likely that a valid property description contained in the search warrant giving rise to the arrest would be one either.

[5]*See* TEX. R. APP. P. 33.1.

[6]There are other circumstances in which the fundamental error doctrine permits review, such as in some juvenile delinquency cases. *See State v. Santana*, 444 S.W.2d 614, 615 (Tex. 1969), *vacated on other grounds*, 397 U.S. 596 (1970).

350 (Tex. 2003); *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998); *Allright, Inc. v. Pearson*, 735 S.W.2d 240 (Tex. 1987); *Am. Gen. Fire & Cas. Co. v. Weinberg*, 639 S.W.2d 688, 688–89 (Tex. 1982). Accordingly, although the descriptions employed may very well render the forfeiture ineffective to pass title to any interest in any lands due to the paucity of the description of the realty to be forfeited, we cannot address any error which might be posed by any such possible defect. Making this observation and posing the question we have posed is the extent we are permitted to travel concerning this matter. Were we to go further, "we would not only trespass into addressing an issue we have no specific authority to address, but we would further enmesh ourselves by groping into the murky netherworld of unassigned error. This we refuse to do." *In re S.F.*, 2 S.W.3d 389, 391 (Tex. App.—San Antonio 1999, no pet.).

Having disposed of the issues raised by Doke, we affirm the order of forfeiture.



Bailey C. Moseley
Justice

Date Submitted: December 6, 2007
Date Decided: January 16, 2008

17