

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00041-CV
_____

GEARY H. LEE, Appellant

V.

ELIZABETH DEANNE HOLOUBEK, F/K/A ELIZABETH DEANNE LEE, Appellee

On Appeal from the County Court at Law
Rusk County, Texas
Trial Court No. 2012-09-449CCL

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

Geary H. Lee and Elizabeth Deanne Holoubek (formerly Lee) were divorced in 1988 after fourteen years of marriage. In this suit, Holoubek sought to recover her share of Lee's retirement benefits that had not been divided in their divorce decree. After a very short hearing before the bench, the County Court at Law in Rusk County awarded Holoubek judgment for $76,935.68, representing her share of the retirement benefits Lee received upon his retirement in 2006, plus a reasonable rate of return for nine years, and imposed a lien on Lee's retirement accounts. In addition, the trial court awarded Holoubek attorney fees in the amount of $30,774.27. After the trial court entered findings of fact and conclusions of law, Lee appealed.

Lee complains that there is legally and factually insufficient evidence to support the trial court's findings that the retirement funds would have grown in the amount found by the trial court and that a lien or constructive trust should attach to his retirement accounts. He also complains that the trial court erred as a matter of law awarding contingent attorney fees and that there was legally and factually insufficient evidence to find that $30,774.27 in attorney fees was reasonable and necessary.

We find (1) that Lee failed to preserve his error related to the awarding of contingent attorney fees, (2) that there is sufficient evidence to support the trial court's finding relating to the growth in the amount of retirement funds and to support the attachment of a lien, or constructive trust, on his retirement accounts, and (3) that there is legally sufficient evidence to support the attorney fee award. However, we find that there is factually insufficient evidence to support the amount of attorney fees awarded. Therefore, we affirm the trial court's findings regarding the

growth of Lee's retirement accounts and that a lien or constructive trust should attach to those accounts. We will reverse the trial court's award of attorney fees unless Holoubek files a remittitur with the clerk of this court in the amount of $20,774.27 within fifteen days of the date of this opinion. If Holoubek files the proposed remittitur, we will modify the trial court's judgment and affirm the judgment, as modified. If no remittitur is filed, we will remand that issue to the trial court to conduct a new hearing on attorney fees.

## I.   Background

Lee began working at Texas Eastman in August 1973 and retired in February 2006. Holoubek and Lee were married in April 1974 and divorced in August 1988. However, their divorce decree did not divide the retirement benefits Lee was accruing at Texas Eastman. In 1992, Holoubek filed suit to divide the retirement benefits, and the parties agree that a hearing was held on Holoubek's petition in 1993. The parties also agree that the court that heard the suit in 1993 made a notation on its docket sheet that Holoubek was entitled to 35%, and Lee 65% of Lee's retirement benefits. However, no final order or judgment was entered in that suit, and the suit was dismissed for want of prosecution in 1997.

After Lee retired, he received $306,306.00 from Eastman from his retirement account, and $97,400.00 from the Eastman Investment Plan Employee Stock Ownership Plan (ESOP), which he testified was a savings account he began after the divorce. Lee rolled all of these funds ($403,706.00) over into an investment account in March 2006. Lee testified that, over the nine years since he retired from Eastman, he has taken distributions totaling $213,000.00, including

3

taxes on the distributions, and that there is approximately $384,000.00 remaining in his account at Edward Jones.

Although Lee maintains that a court in 1993 determined Holoubek's portion to be 35%, he testified that he has not offered her any of the funds. He explained that he would have done so if there had been a court order entered, but that there was not. He acknowledged that she is entitled to a portion of the funds and stated that he is willing to give it to her. He also testified that he never put her name on any of his retirement accounts and that she was never named as beneficiary of the accounts. Lee and Holoubek agreed that a proper valuation of Holoubek's portion in 2016 requires some form of market adjustment calculation. Lee also agreed with the following calculations submitted by Holoubek (1) if the correct total amount of retirement funds subject to division is $306,306.00, then Holoubek's portion in February 2006 would have been $47,275.00, and (2) if the correct total amount subject to division is $403,706.00, then Holoubek's portion in 2006 would have been $62,307.00.

Holoubek testified that Lee never offered her any of the funds and that he did not include her in any decisions pertaining to the funds. She also testified that she never gave Lee permission to manage her money or to hold on to it. She testified that she had no knowledge of his financial transactions with the retirement funds, of any of his funds withdrawals, or of whom he named as beneficiary. On cross-examination, Holoubek admitted that she had never asked Lee to protect her interest in the funds and that she had never asked him to pay over her interest in the funds. Holoubek also testified that she hired her attorney to recover the money and that they had discussed different methods of compensation, including hourly and contingency fee arrangements. She

4

testified she was not able to pay a $200.00 an hour fee and that an hourly arrangement would have prevented her from pursuing the suit. In addition to the retirement benefits, she requested that the trial court award her attorney fees of 40% of her damage recovery, which is the contingency fee amount she agreed to pay her attorney.

In addition to the parties' testimony, records of Lee's accounts at Smith Barney, Raymond James, and Edward Jones covering the nine years since his retirement were admitted into evidence without objection. Further, a summary showing the beginning balances at each company, early distributions, and ending balances was introduced without objection. Based on that summary, (1) Lee's retirement benefits as of March 2006 totaled $403,706.45, (2) between March 2006 and the date on which Lee's summary was created, Lee took early distributions totaling $213,209.18, and (3) the ending balance of Lee's retirement account on January 31, 2015, was $385,151.71.

Finally, Holoubek's trial counsel, Clay Wilder, testified that he has thirty years' experience practicing law and that the hearing lasted one and one-half hours, but that he and his staff put forth a great deal of effort to boil down a lot of material. He also testified that his services were necessary to enable Holoubek to obtain the necessary financial information from the various firms. Wilder told the court that he had to travel to St. Louis, Missouri, to get the records from Edward Jones and that he paid $300.00 to obtain the records from Raymond James. He testified that obtaining the records required multiple hours of effort by him and his staff. He also testified that, at his standard rate of $200.00 an hour, the attorney fees would have been out of proportion to the value of Holoubek's claim. Since his client could not afford to pay on an hourly basis, he and

5

Holoubek agreed to a standard contingency fee in East Texas of 40%.[1]  Wilder also testified that

he had represented Holoubek for a long period of time, that he believed the 40% should be

measured using Holoubek's total recovery, and that he believed he should be entitled to around

$40,000.00.[2]  On cross-examination, he acknowledged the prior determination of the court that

Holoubek owned a portion of the retirement benefits, that he knew she would be able to recover

her portion, and that he had represented her in the prior proceeding.

The trial court entered judgment in favor of Holoubek for $76,935.98, awarded Holoubek's

counsel $30,774.27 in attorney fees, and imposed a lien on Lee's accounts at Edward Jones to

secure payment of those sums.  After a request by Lee, the trial court entered findings of fact and

conclusions of law.

## II.    Preservation of Error

In his first point of error, Lee asserts that the trial court erred as a matter of law in awarding

attorney fees in this matter.[3]   Lee argues that contingency fee arrangements are not permissible in

family law matters under the Texas Rules of Professional Conduct,[4] that Holoubek created the

---

[1]The contingency fee agreement between Holoubek and Wilder was admitted into evidence without objection.

[2]Wilder based this figure on his contention that Holoubek was also entitled to a share of Lee's ESOP, which would have brought her recovery to around $100,000.00.

[3]Lee variously frames this issue as "[t]he trial court erred as a matter of law in awarding appellee a contingent attorney fee in a domestic relations matter" and "[t]he trial court abused its discretion in awarding appellee a contingent attorney fee in a domestic relations matter."

[4]Lee concedes that the Rules of Professional Conduct do not expressly forbid contingency fee arrangements in family law matters, but relies on Comment 9 of Rule 1.04, which states, "[C]ontingent fee arrangements in domestic relations cases are rarely justified."  *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04, cmt. 9, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2005) (TEX. STATE BAR R. art. X, § 9); *see also* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(d), (e).

situation that necessitated an attorney's services by her own negligence in failing to secure a qualified domestic relations order after the 1993 hearing, that attorney fees are not recoverable under Section 9.205 of the Texas Family Code[5] under the facts of this case, and that the award of attorney fees was barred by res judicata since no attorney fees were awarded in the 1993 hearing. However, at trial Lee did not object to the testimony of Holoubek's counsel regarding attorney fees, nor did he assert that Holoubek was not entitled to recover attorney fees.

In order to preserve a complaint for appellate review, our Rules require that the party present the complaint "to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1); *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 860 (Tex. App.—Corpus Christi 1998, pet. denied). Since Lee did not object to the award of attorney fees in the trial court,[6] he has preserved nothing for our appellate review. *See Shiba*, 976 S.W.2d at 860; *County of El Paso v. Boy's Concessions, Inc.*, 772 S.W.2d 291, 293 (Tex. App.—El Paso 1989, no writ). We overrule this point of error.

## III.    Standard of Review

When findings of fact are entered in a case tried to the court, they "are of the same force and dignity as a jury's answers to jury questions." *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (quoting *.39 Acres v. State*, 247 S.W.3d 384, 387 (Tex. App.—Texarkana 2008, pet. denied)). We review the trial court's findings for legal and factual

---

[5]Section 9.205 provides that the court may award reasonable attorney fees in a "proceeding to divide property previously undivided in a decree of divorce." TEX. FAM. CODE ANN. § 9.205 (West Supp. 2015).

[6]Although Lee complained that the trial court erred in awarding attorney fees in a motion for new trial, the motion was untimely filed thirty-three days after the final judgment was signed. *See* TEX. R. CIV. P. 329b(a).

sufficiency using "the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question." *Storck v. Tres Lagos Prop. Owners Ass'n, Inc.*, 442 S.W.3d 730, 734 (Tex. App.—Texarkana 2014, pet. denied) (quoting *.39 Acres*, 247 S.W.3d at 387). "Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the finding." *Bendalin v. Youngblood & Assocs.*, 381 S.W.3d 719, 734 (Tex. App.—Texarkana 2012, pet. denied) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)). Further, when the court's findings address one or more elements of a ground of recovery or defense, "any omitted findings will be deemed to support the judgment if evidence exists to support such findings." *Reed v. Wright*, 155 S.W.3d 666, 671 (Tex. App.—Texarkana 2005, pet. denied) (citing TEX. R. CIV. P. 299; *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985)).

In our review for legal sufficiency, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We "credit evidence favorable to the judgment if a reasonable fact-finder could . . . [and] disregard contrary evidence unless a reasonable fact-finder could not." *Storck*, 442 S.W.3d at 734 (citing *Wilson*, 168 S.W.3d at 827). A legal sufficiency challenge will be sustained only if the record shows:

> a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) . . . the evidence conclusively establishes the opposite of a vital fact.

*Wilson*, 168 S.W.3d at 827 (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). If the evidence is such that reasonable and

8

fair-minded people could differ in their conclusions, then the evidence is more than a mere scintilla. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *Storck*, 442 S.W.3d at 734.

In our factual sufficiency review, we consider all the evidence, not just the evidence supporting the judgment. *Storck*, 442 S.W.3d at 734; *Lambright*, 322 S.W.3d at 430. We will reverse the trial court's judgment "only if the evidence is so weak or if the finding is so contrary to the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Gnerer v. Johnson*, 227 S.W.3d 385, 389 (Tex. App.—Texarkana 2007, no pet.). In a trial to the court, the judge is the sole arbiter of witness credibility and the weight to be given testimony; therefore, we cannot substitute our judgment for the trial court's as long as the decision under review falls within the zone of reasonable disagreement. *Bendalin*, 381 S.W.3d at 735 (citing *Williams v. Nationstar Mortg., L.L.C.*, 349 S.W.3d 90, 93 (Tex. App.—Texarkana 2011, pet. denied)). However, "[a]lthough we consider the evidence in a light most favorable to the verdict, indulging every reasonable inference that supports it, we may not disregard evidence that allows only one inference." *Williams*, 349 S.W.3d at 93.

## A. Sufficient Evidence Supports the Trial Court's Findings Regarding the Growth of the Retirement Funds

In his third point of error, Lee asserts that there is legally and factually insufficient evidence to support the trial court's finding that Holoubek's share of the retirement funds would have grown in the amount of $29,660.48 over the nine years since he retired. He bases his entire argument on the proposition that the trial court's admission of a report from Morningstar under Texas Rule of Evidence 803(17)'s exception for "[m]arket quotations, lists, directories, or other compilations that

are generally relied upon by the public or by persons in particular occupations" was erroneous, and that in the absence of that report, the evidence is insufficient to support the trial court's finding. TEX. R. EVID. 803(17). For the reasons cited below, we overrule this point of error.[7]

The Morningstar report purported to determine that funds invested over the period of time from Lee's retirement to the date of trial would have yielded an average annualized return of 5.56%.[8] When Holoubek offered the Morningstar report into evidence, Lee objected that it was hearsay. Holoubek then represented that it was admissible under Rule 803(17) as a market report generally used and relied upon by the public or by persons in a particular occupation and that it was a product provided by the Edward Jones Group where Lee had his money invested. Lee did not contest these representations and did not make any further objection to the admission of the report. On appeal, however, Lee contends that the trial court should not have admitted this document since Holoubek did not offer foundational testimony supporting the reliability of the market record to establish the 5.56% rate of return and of its regular use by persons engaged in the financial trades.

---

[7]The assertion of both the inadmissibility of the document and the sufficiency of the evidence in the same point of error is multifarious. A multifarious issue is one that raises more than one specific ground of error. *In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied). We have repeatedly warned litigants to refrain from raising multifarious points of error. *See, e.g.*, *In re Guardianship of Moon*, 216 S.W.3d 506, 508 (Tex. App.—Texarkana 2007, no pet.); *Newby v. State*, 169 S.W.3d 413, 414 (Tex. App.—Texarkana 2005, pet. ref'd). Failure to heed our warnings runs the risk of having any multifarious issue(s) being summarily overruled. *Newby*, 169 S.W.3d at 414; *Harris v. State*, 133 S.W.3d 760, 764 n.3 (Tex. App.—Texarkana 2004, pet. ref'd); *Parra v. State*, 935 S.W.2d 862, 875 (Tex. App.—Texarkana 1996, pet. ref'd). Nevertheless, we will address both points in the interest of resolving this appeal on a substantive rather than a procedural basis.

[8]The trial court compounded interest on Holoubek's share of the retirement funds—$47,275.20—at the rate of 5.56% per annum for nine years, which yielded an increase of $29,660.48.

In order to preserve a complaint for appellate review, our rules require that the party first raise his objection in the trial court "with sufficient specificity to make the trial court aware of the" grounds of the complaint. *See* TEX. R. APP. P. 33.1(a)(1)(A); *In re N.C.M.*, 66 S.W.3d 417, 420 (Tex. App.—Tyler 2001, no pet.). "A specific objection is one that enables the trial court to understand the precise grounds so as to make an informed ruling and affords the offering party an opportunity to remedy the defect, if possible." *N.C.M.*, 66 S.W.3d at 420 (citing *McKinney v. National Union Fire Ins. Co.*, 772 S.W.2d 72, 74 (Tex. 1989)). In addition, a party's complaint on appeal "must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

The Morningstar report clearly constitutes a document within the category of "[m]arket quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations." TEX. R. EVID. 803(17). Therefore, the trial court correctly ruled that it fell within the category of documents identified in Rule 803(17)'s exception to the hearsay rule and overruled Lee's general hearsay objection. On appeal, however, Lee attempts to expand his hearsay objection by arguing that Holoubek did not lay a proper foundation establishing its reliability and regular use by persons in the financial industry as required by the rule. In other words, while Lee does not contest that the Rule 803(17) exception *could* apply to the Morningstar report, he asserts here that Holoubek failed to establish a foundation sufficient to show that it *does* apply. Nevertheless, "a general hearsay objection does not preserve for appeal a challenge to a proper predicate's being made to admit business records." *Rogers v. Dep't of Family & Protective Servs.*, 175 S.W.3d 370, 376 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd w.o.j.) (citing

11

*Clark v. Walker-Kurth Lumber Co.*, 689 S.W.2d 275, 281 (Tex. App.—Houston [1ˢᵗ Dist.] 1985, writ ref'd n.r.e.) (holding that trial court objection to personal knowledge of sponsoring witness to assert business records exception to hearsay rule did not preserve error on appellate complaints that "invoices were not generated at or near the time of the transaction and that appellee failed to lay the proper predicate for introduction of a summary of business records"). Since Lee's complaint on appeal does not comport with his general hearsay objection made at trial, Lee has not preserved this issue for our review.

Lee admits that the trial court based its calculations on the Morningstar report to reach its finding that Holoubek's share of the retirement funds would have grown by $29,660.48 during the relevant time period before trial, and he does not dispute that the report, if probative, would be sufficient to support the trial court's finding. Because the report supports the trial court's finding that Holoubek's share of the retirement funds would have grown by $29,660.48, we find there is legally sufficient evidence to support this finding. We overrule this point of error.

**B.    Sufficient Evidence Supports the Trial Court's Imposition of a Lien on Lee's Retirement Funds**

In his fourth point of error, Lee challenges the evidence supporting the trial court's imposition of a constructive trust on his retirement accounts at Edward Jones. The trial court entered a money judgment in favor of Holoubek for the amount of her share of Lee's retirement benefits, along with a reasonable gain for the years since his retirement, and imposed a lien on Lee's Edward Jones account in that amount. This, in effect, imposed a constructive trust on the account. *See In re Marriage of Nolder*, 48 S.W.3d 432, 434 (Tex. App.—Texarkana 2001, no pet.). A constructive trust is a creation of equity intended to prevent a wrongdoer from profiting

12

from his wrongful acts.  *Gray v. Sangrey*, 428 S.W.3d 311, 315 (Tex. App.—Texarkana 2014, pet. denied).  It is remedial in nature and functions broadly to redress wrongdoing or unjust enrichment, in keeping with the basic principles of equity and justice.  *Id.*  "The trial court may impose a constructive trust "when one party commits fraud or breaches a confidential relationship."  *Nolder*, 48 S.W.3d at 434 (citing *Meadows v. Bierschwale*, 516 S.W.2d 125, 129 (Tex. 1974)).  A confidential relationship may be a formal fiduciary relationship, such as between partners, or may arise informally "from a moral, social, domestic, or merely personal relationship where one person trusts and relies upon another."  *Gray*, 428 S.W.3d at 316 (citing *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992)); *Smith v. Deneve*, 285 S.W.3d 904, 911 (Tex. App.—Dallas 2009, no pet.).  The relationship of a husband and wife is considered a confidential relationship on par with formal fiduciary relationships.  *See In re Marriage of Smith*, 115 S.W.3d 126, 135 (Tex. App.—Texarkana 2003, pet. denied).  In addition to either actual fraud or the breach of a confidential relationship, the imposition of a constructive trust requires unjust enrichment of the wrongdoer and the identification of a specific res that can be traced back to the original res acquired by fraud or breach of a confidential relationship.  *Gray*, 428 S.W.3d at 315; *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.).

In its findings of fact, the trial court found (1) that Holoubek was entitled to 35% of Lee's retirement benefits accumulated during their marriage; (2) that Lee retired on February 1, 2006, and withdrew 100% of the retirement benefits, including those belonging to Holoubek; (3) that Lee would not deliver Holoubek's share of the benefits to her, despite demand, and that he held it without authority; and (4) that when Lee retired and withdrew the accounts, Holoubek's portion

13

totaled $47,275.20. Since the facts found by the trial court are sufficient to support at least one of the elements necessary to impose a constructive trust, we deem the omitted findings as supporting the judgment if there is sufficient evidence. *Reed*, 155 S.W.3d at 671. Lee only maintains that the evidence is lacking to show that he wrongfully took property owned by Holoubek or that there was a fiduciary or special relationship regarding the retirement benefits.

Regarding the lack of evidence showing a fiduciary or special relationship, Lee asserts that their status as former spouses with a cotenancy in his retirement account is insufficient, without citing relevant authority. However, the relevant time to determine whether a fiduciary or confidential relationship exists is at the time the res is created. *See, e.g.*, *Gray*, 428 S.W.3d at 314, 316–17 (evidence showed that confidential relationship existed at time of purchase of house at issue). Even if the relationship later becomes strained, or even broken, as long as the fiduciary has control over the res, his fiduciary duties toward the beneficiary remain unchanged. *See Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 508–09 (Tex. 1980).[9] In this case, Lee admitted that he was married to Holoubek from 1974 until 1988, when her interest in the res was created. Since they were husband and wife at the time, a fiduciary relationship existed when the res was created. *See Smith*, 115 S.W.3d at 135. He also admitted that he has been in full control of the retirement benefits since his retirement. Since Lee remains in control of the res, his fiduciary duties toward

---

[9]As Holoubek points out, the Texas Family Code provides, "The subsequent actual receipt by the non-owning party of property awarded to the owner in a decree of divorce or annulment creates a fiduciary obligation in favor of the owner and imposes a constructive trust on the property for the benefit of the owner." TEX. FAM. CODE ANN. § 9.011(b) (West 2006). While this statute may not directly apply in this instance, we note that this statute is a legislative recognition of the common law principles that the marriage relationship is a fiduciary relationship and that fiduciary duties are continuing even when the relationship is broken, as long as the fiduciary controls property owned by the beneficiary.

14

Holoubek, as well as the fiduciary relationship, is continuing. *See Moore*, 595 S.W.2d at 508–09. Therefore, we find that there is legally and factually sufficient evidence of a fiduciary relationship.

Lee also argues that the evidence does not show he wrongfully took property owned by Holoubek. Although not entirely clear, we understand this argument as challenging the evidentiary support that Lee breached a confidential relationship or that he was unjustly enriched. He argues that, since Holoubek testified that she had never asked him to safeguard her share or to turn it over to her, he has not wrongfully withheld it. However, Lee testified that he has known since 1993 that a portion of the retirement benefits were owned by Holoubek. He also testified that, when he received the benefits in 2006, he opened a retirement account containing all of the benefits in his own name and that, for the past nine years, Holoubek has never been shown as a co-owner of any of the funds or as a beneficiary of the account. The account records also show that there has never been a separation of Holoubek's portion from Lee's, but rather, that the funds have at all times been commingled. In addition, he testified that he has taken over $200,000.00 in distributions from the account.

Holoubek testified that Lee never told her about the retirement account and that he did not include her in any decisions pertaining to the funds. She also testified that she never gave Lee permission to manage her money and that she had no knowledge of his financial transactions with the money or of any of his withdrawals from the funds. This evidence shows that Lee had use of all the retirement benefits and treated them as his own for nine years and that he excluded Holoubek from her share for all of that time.

15

Among the duties a fiduciary owes his beneficiary is the duty to fully disclose all material facts that might affect the beneficiary's rights, "a high duty of good faith, fair dealing, honest performance, and strict accountability," and the duty to avoid commingling of funds. *Punts v. Wilson*, 137 S.W.3d 889, 891–92 (Tex. App.—Texarkana 2004, no pet.) (quoting *Ludlow v. DeBerry*, 959 S.W.2d 265, 279 (Tex. App.—Houston [14th Dist.] 1997, no writ)); *see also Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984). The evidence shows that Lee commingled his and Holoubek's funds, that he failed to inform her about the funds, and that he failed to deal fairly with Holoubek. In addition, it shows that for nine years he has had the exclusive use and benefit of Holoubek's funds. We find that this evidence is sufficient to establish both Lee's breach of the confidential relationship and his unjust enrichment. We overrule this point of error.

## C. The Evidence is Legally Sufficient to Support the Amount of the Attorney Fee Award

In his second point of error, Lee challenges the legal and factual sufficiency of evidence to support the amount of the attorney fee award. The trial court found that Holoubek had incurred reasonable and necessary attorney fees in recovering her property and concluded that a reasonable amount was $30,774.27. It is undisputed that this amount is 40% of the amount awarded Holoubek in the judgment. We review the amount awarded for legal and factual sufficiency. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Ansell Healthcare Prods., Inc. v. Owens & Minor, Inc.*, 189 S.W.3d 889, 902 (Tex. App.—Texarkana 2006), *rev'd on other grounds*, 251 S.W.3d 499 (Tex. 2008). The determination of the amount of fees that are reasonable and

16

necessary is a question of fact. *Bocquet*, 972 S.W.2d 19, 21. To determine whether attorney fees are reasonable, the trial court must consider the *Arthur Andersen & Co.* factors.[10] *Id.*

When a party without the burden of proof challenges the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Id.* (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998)). Lee contends that Wilder's testimony lacked sufficient specificity and detail as to the amount and scope of the services performed to support the award. We agree that Wilder's testimony lacked specificity and was vague as to the amount of time worked and why it was necessary to expend that amount of time on this case. However, he was qualified by his expertise, personal knowledge of the work performed, and its value to his client to testify as to what reasonable attorney fees would be in this case. *See Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010).

---

[10]*See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). These factors include:

> (1)      the time and labor required, the novelty and difficulty of the question presented, and the skill required to properly perform the legal service;
> (2)      the likelihood . . . that the acceptance of employment precluded other employment by the lawyer;
> (3)      the fee customarily charged in the locality for similar services;
> (4)      the amount involved and the results obtained;
> (5)      the time limitations imposed by the client or by the circumstances;
> (6)      the nature and length of the professional relationship with the client;
> (7)      the experience, reputation, and ability of the lawyer performing the services; and
> (8)      whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. A (TEX. STATE BAR R., art. X, § 9)).

17

Further, although Lee cross-examined him, he did not question the reasonableness of the fees, nor did he put on controverting evidence on the issue of attorney fees. Under these circumstances, Wilder's testimony was some evidence of what reasonable attorney fees would be in this case. *See id.* Therefore, we find that the evidence was legally sufficient to support the award.[11]

> **D.** **The Evidence is Factually Insufficient to Support the Amount of the Attorney Fee Award**

The trial court in this case awarded Holoubek attorney fees equaling 40% of her recovery, as provided in her contingency fee agreement with Wilder. In *Arthur Andersen & Co.*, the Supreme Court held that the Deceptive Trade Practices Act, which allows recovery of "reasonable and necessary attorneys' fees,"[12] did not authorize "the shifting of the plaintiff's entire contingent fee to the defendant without consideration of the factors required by the Rules of Professional Conduct."[13] *Arthur Andersen & Co.*, 945 S.W.2d at 818. The court explained that, while the contingency fee contract may be reasonable to the parties to the contract, it does not mean that it is "reasonable for the purposes of shifting the fee to the defendant." *Id.* "A reasonable fee is one

---

[11]Absent a contract between the parties, an award of attorney fees must be based on some statutory authority. *See All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 503 (Tex. App.—Texarkana 2005, no pet.) (citing *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999)). We note that an award of attorney fees in this case is specifically authorized by statute. *See* TEX. FAM. CODE ANN. § 9.205 (authorizing an award of reasonable attorney fees in a proceeding to divide property previously undivided in a decree of divorce or annulment). Holoubek originally brought this action as a suit to divide property that was not divided in the divorce decree. Although she subsequently amended her petition and added additional causes of action, she maintained her original cause of action in the alternative.

[12]TEX. BUS. & COM. CODE ANN. § 17.50(d) (West 2011).

[13]*See supra* note 10. Although *Arthur Andersen & Co.* was brought under the Texas Deceptive Trade Practices Act, its holding has been extended to other contexts involving fee-shifting statutes. *See AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 339 (Tex. App.—Texarkana 1999, no pet.) (cases cited therein).

that is not excessive or extreme, but rather moderate or fair." *Garcia*, 319 S.W.3d at 642. While a contingent fee agreement should be considered by the fact-finder, the fact-finder "must decide the question of attorney's fees specifically in light of the work performed in the very case for which the fee is sought." *Arthur Andersen & Co.*, 945 S.W.2d at 819.

Therefore, there must be sufficient evidence of the *Arthur Andersen & Co.* factors to support the attorney fee award. This does not mean, however, that there must be evidence of each of the factors. *Hays & Martin, L.L.P. v. Ubinas-Brache*, 192 S.W.3d 631, 636 (Tex. App.—Dallas 2006, pet. denied). Further, although it is typical to express the nature and extent of the services performed by the number of hours expended, this is not required in every case. *Id.*; *Hagedorn v. Tisdale*, 73 S.W.3d 341, 353 (Tex. App.—Amarillo 2002, no pet.). In our review, we consider the entire record, taking into account "the testimony, the amount in controversy, the nature and complexities of the case, and the common knowledge and experiences of the justices as lawyers and judges." *See Giles v. Cardenas*, 697 S.W.2d 422, 429 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (citing *Southland Life Ins. Co. v. Norton*, 5 S.W.2d 767, 769 (Tex. Comm'n App. 1928, holding approved)).

In this case, although Wilder testified that his standard hourly rate was $200.00, his testimony as to how many hours he worked is vague, at best. In addition, Wilder did not segregate his work from his staff's, testifying only to the "multiple hours" worked by him and his staff. Wilder is not entitled to recover attorney fees for work performed by his secretary, and an award of attorney fees may include a legal assistant's time only to the extent that such work "has traditionally been done by an attorney." *All Seasons Window & Door Mfg., Inc.*, 181 S.W.3d at

19

504 (quoting *Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.—Fort Worth 1997, writ denied)). From his testimony and the record, it appears that there was only one, perhaps two, depositions, two subpoenas for financial documents, and one trip to St. Louis to obtain documents. Although the financial documents were somewhat lengthy, it appears that the actual information necessary to Holoubek's cause of action could be located easily and was reducible to a one-page summary.

The record shows that this was a relatively simple and straightforward case, which took less than two hours to try. Wilder provided nothing in his testimony that could lead a reasonable fact-finder to conclude that there was anything unusual or complex either in the law or the facts of this case. Although Wilder testified that, if he charged his hourly rate, it would greatly exceed the $40,000.00[14] based on his contingency agreement and that such amount was reasonable, we cannot ignore the record in this case showing it to be a non-complex matter with limited discovery that took less than two hours to try. Further, although Wilder had a contingency fee contract, because of the prior suit Wilder admitted that he knew that Holoubek would recover her portion of the retirement benefits.

In addition, Wilder, who testified as to his thirty years' experience, would have been fairly certain that a constructive trust on those accounts was available, and it would greatly lessen any uncertainty in recovering the funds. Thus, although Wilder addressed some of the *Arthur Andersen & Co.* factors in his testimony, the lack of specifics in regard to the number of hours he actually spent, the lack of any testimony showing that this case or its issues were in any way complex or

---

[14]At $200.00 an hour, this would mean he spent over 200 hours on this matter.

unusual, the record showing limited discovery and a very brief hearing, all show that the evidence in this case is factually insufficient to support the trial court's finding that a reasonable amount of attorney fees was $30,774.27. Therefore, we sustain this point of error.

In response, Holoubek points out that Lee did not cross-examine Wilder on the amount of reasonable attorney fees and did not present any controverting evidence. She relies on the rule that "clear, direct, and uncontroverted evidence of attorney's fees is taken as true as a matter of law, especially when the opposing party has not rebutted the evidence." *Merch. Ctr., Inc. v. WNS, Inc.*, 85 S.W.3d 389, 396 (Tex. App.—Texarkana 2002, no pet.) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881–82 (Tex. 1990)). However, in *Merchandise Center, Inc.*, the attorney, unlike in this case, provided extremely detailed billing statements and explained how the case became very complex and unwieldy. *Id.* Further, in *Ragsdale*, the court noted that this rule is an exception to the general rule[15] that applies "where the testimony of an interested witness is not contradicted by any other witness, *or attendant circumstances*, and the same is clear, direct and positive, and *free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon*." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (emphasis added).

In *Ragsdale*, the attorney's uncontroverted testimony showed the time involved, the nature of the services rendered, and the reasonableness of the fees. *Id.* Thus, in *Ragsdale* and *Merchandise Center, Inc.*, there were no circumstances to cast doubt on the attorney's testimony

---

[15]The general rule is that "the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the [fact-finder]." *Ragsdale*, 801 S.W.2d at 882; *Garcia*, 319 S.W.3d at 642.

21

regarding the reasonableness of his fee. Here, although the fee based on the contingency fee agreement may have been reasonable as to his client, the record casts doubt on Wilder's testimony as to the reasonableness of those fees when they are shifted to Lee.

Since we have found there is factually insufficient evidence to support the amount of attorney fees awarded by the trial court, we may either affirm conditioned on a remittitur, or we may remand for further proceedings. *Bocquet*, 972 S.W.2d at 22. In *Giles*, counsel for appellees testified that his billing rate was $100.00 per hour, that the total time spent before trial was 83.7 hours, and that he spent 25 hours preparing for and attending trial, bringing the total amount of attorney fees to $10,870.00. *Giles*, 697 S.W.2d at 430. This testimony was uncontroverted at trial. *Id.* On appeal, the San Antonio Court of Appeals pointed out that allowing sixteen hours for the two-day trial, the record showed that counsel spent 92.7 hours (or 11.6 working days) to investigate the case, consult with his clients and witnesses, research the law, and generally prepare the case for trial. The appellate court held that appellees' counsel over prepared for the case and that appellants could not be held liable for attorney fees due to over preparation and reduced the award by $5,000.00 (50 hours). *Id.*

In this case, the trial court awarded attorney fees of $30,774.27, which is the equivalent of over 153 hours of work based on Wilder's standard hourly rate of $200.00. Allowing two hours for trial and another six hours for trial preparation, sixteen hours (two working days) to travel to St. Louis to obtain documents, eight hours for document review, and another eight hours for the deposition of the parties, leaves 121 hours (15.125 working days) for preparing and filing pleadings, legal research, consulting with his client, and generally preparing the case for trial. In

this case, an additional ten hours would be more than enough time to handle these matters. This would yield a reasonable attorney fee award of $10,000.00.

Consequently, in accordance with Rule 46.3 of the Texas Rules of Appellate Procedure, we suggest a remittitur of attorney fees in the amount of $20,774.27. If Holoubek files the suggested remittitur within fifteen days of the date of this opinion, we will modify the judgment and, as modified, affirm the same. If the suggested remittitur is not timely filed, the judgment will be affirmed as to the growth of Holoubek's share of the retirement account and the imposition of a lien or constructive trust on Lee's retirement accounts, but the judgment, insofar as it granted attorney fees in the amount of $30,774.27, will be reversed and remanded to the trial court for a new trial. *See* TEX. R. APP. P. 46.3.[16]

## V.     Conclusion

Accordingly, we make the following disposition of this case.

We affirm that portion of the trial court's judgment that reflects the court's findings regarding the growth of Lee's retirement accounts and that a lien or constructive trust should attach to those accounts.

We further suggest a remittitur of attorney fees in the amount of $20,774.27.

If Holoubek files a remittitur with the clerk of this court in the amount of $20,774.27 within fifteen days of the date of this opinion, we will modify the trial court's judgment to reflect an award of attorney fees in the amount of $10,000.00 and affirm the judgment as modified.

---

[16]Finally, Lee also challenges the attorney fee award on the basis that those fees resulted from Holoubek's negligence in failing to obtain a Qualified Domestic Relations Order (QDRO) in 1993. Yet, Lee overlooks the fact that he could also have presented a proposed QDRO to the trial court in 1993, and it is arguable that, as a fiduciary, he should have obtained the QDRO when Holoubek failed to do so in order to protect her share of the retirement funds.

23

If, however, no remittitur is filed, we will reverse the trial court's award of attorneys fees and remand that portion of the case to the trial court for a new hearing.


Ralph K. Burgess
Justice


Date Submitted:    February 1, 2016
Date Decided:      May 6, 2016